# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |  |
|---|---|---|
| **ESW HOLDINGS, INC.,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Case No.: 6:19-cv-44-ADA** |
| v. | § | |
| | § | |
| **ROKU, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

## ROKU'S RULE 12(B)(6) MOTION TO DISMISS ESW'S COMPLAINT

**<u>TABLE OF CONTENTS</u>**

I.    SUMMARY ................................................................................................................1

II.   THE '718 AND '349 PATENTS ARE DIRECTED TO PATENT-INELIGIBLE
SUBJECT MATTER ...............................................................................................2

    A.    Factual Background ......................................................................................2

        1.    The '718 Patent ................................................................................2

        2.    The '349 Patent ................................................................................2

    B.    Applicable Law ............................................................................................3

        1.    Abstract Ideas Are Not Patentable ..................................................3

        2.    Patent Eligibility Is Determined Using The Two-Step Test In *Alice*...........3

        3.    Rule 12(b)(6) Based On 35 U.S.C. § 101 Permits Dismissal ....................4

    C.    Argument ......................................................................................................5

        1.    The '718 Patent Is Patent Ineligible ..............................................5

            a.    *Alice* Step One – The '718 Patent Is Directed To An
Abstract Idea .......................................................................5

            b.    *Alice* Step Two – The '718 Patent Lacks An Inventive
Concept ...............................................................................12

        2.    The '349 Patent Is Patent Ineligible ..............................................16

            a.    *Alice* Step One – The '349 Patent Is Directed To An
Abstract Idea .......................................................................16

            b.    *Alice* Step Two – The '349 Patent Lacks An Inventive
Concept ...............................................................................19

III.  CONCLUSION.....................................................................................................20

**Cases**  **Page(s)**

*02 Media, LLC v. Narrative Sci. Inc.*,
  No. 15-5129, 2016 WL 738598 (N.D. Ill. Feb. 25, 2016) ....................................................18

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)........................................................................................12

*Affinity Labs of Texas LLC v. Amazon.com Inc.*,
  Case No. 6:15-cv-0029-WSS-JCM, 2015 WL 3757497 (W.D. Tex. June 12,
  2015) .............................................................................................................................4, 5

*Affinity Labs of Texas, LLC v. DIRECTV LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)....................................................................................11, 13

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014).....................................1, 3, 4, 5, 10, 11, 12, 13, 15, 16, 19

*Align Tech. v. 3Shape A/S*,
  No. 17-1646, 2018 WL 4275632 (D. Del. Sept. 7, 2018)......................................10

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
  618 F.3d 1354 (Fed. Cir. 2010)........................................................................................14

*Apple Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)....................................................................................4, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................5

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
  133 S. Ct. 2107 (2013)......................................................................................................3

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)........................................................................................4

*Bilski v. Kappos*,
  561 U.S. 593 (Fed. Cir. 2010)......................................................................................4, 6

*Cleveland Clinic Found. v. True Health Diags.*,
  859 F.3d 1352 (Fed. Cir. 2017).......................................................................................4

*Content Extraction v. Wells Fargo Bank, et al.*,
  776 F.3d 1343 (Fed. Cir. 2014)..............................................................................12, 18, 19

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014) ...................................................18

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011).......................................................3

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)...........................................9, 17, 20

*D &M Holdings, Inc. v. Sonos, Inc.*,
  No. CV 16-141-RGA, 2017 WL 1395603 (D. Del. Apr. 18, 2017) .................18, 19

*Doe v. Robertson*,
  751 F.3d 383 (5th Cir. 2014) .......................................................5

*Electric Power Group, LLC v. ALSTOM SA*,
  830 F.3d 1350 (Fed. Cir. 2016).....................................................11

*EMG Tech., LLC v. Etsy, Inc.*,
  No. 6:16-484, 2017 WL 780648 (E.D. Tex. Mar. 1, 2017) ....................10

*Fairwarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d. 1089 (Fed. Cir. 2016)..............................................2, 3, 12

*Guidry v. Bank of LaPlace*,
  954 F.2d 278 (5th Cir. 1992) .......................................................5

*Hyper Search LLC v. Facebook, Inc.*,
  No. 1:17-cv-01387, 2018 WL 6617143 (D. Del. Dec. 17, 2018) ............6

*I/P Engine, Inc. v. AOL, Inc.*,
  576 F. App'x 982 (Fed. Cir. 2014) (Mayer, J., concurring) ....................5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015)....................................................13

*Intellectual Ventures I, LLC v. Capital One Financial Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017)....................................................11

*Intellectual Ventures I LLC v. Erie*,
  No. 14-220, 2015 WL 5686643 (W.D. Pa. Sept. 25, 2015).....................18

*Intellectual Ventures I, LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)...................................................6, 17

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)....................................................15

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
876 F.3d 1372 (Fed. Cir. 2017)......................................................................11

*Maxon, LLC v. Funai Corp., Inc.*,
Case No. 2017-2139, 2018 WL 1719101 (Fed. Cir. Apr. 9, 2018) .........................13

*Mayo Collaborative Servs. v. Prometheus La*bs.,
132 S. Ct. 1289 (2012).........................................................................4, 20

*Morales v. Square, Inc.*,
75 F. Supp. 3d 716 (W.D. Tex. 2014).................................................................6

*Mortgage Grader, Inc. v. First Choice Loan Services Inc.*
811 F.3d 1314 (Fed. Cir. 2016)........................................................10, 11, 13

*MySpace, Inc. v. Graphon Corp.*,
672 F.3d 1250 (Fed. Cir. 2012).....................................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015).......................................................................4

*P & RO Sols. Grp., Inc. v. CiM Maint., Inc.*,
273 F. Supp. 3d 699 (E.D. Tex. 2017).............................................................10

*Personalized Media Commc'ns, LLC v. Amazon. Com, Inc.*,
No. 13-1608-RGA, 2015 WL 4 730906 (D. Del. Aug. 10, 2015) .........................18

*RecogniCorp v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017).....................................................................12

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) .........................................................................5

*Symantec Corp. v. Zscaler, Inc.*,
Case No. 17-cv-04426-JST, 2018 WL 3537201 (N.D. Cal. Jul. 23, 2018) ............15

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016).......................................................................3

*Taylor v. Books A Million, Inc.*,
296 F.3d 376 (5th Cir. 2002) .........................................................................5

*In re TLI Commc'ns LLC Patent Litig.*,
87 F. Supp. 3d 773 (E.D. Va. 2015) ................................................................17

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014).......................................................................20

*Uniloc USA, Inc. v. E-MDS, Inc.*,
    No. 6:14-CV-00625-RWS, 2015 WL 10791906 (E.D. Tex. Aug. 19, 2015) ........................... 9

*Versata Dev. Grp. v. SAP Am.*,
    793 F.3d 1306 (Fed. Cir. 2015) ........................................................................ 11

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
    No. 13-676, 2015 WL 5768938 (D. Del. Sept. 30, 2015) ........................................ 19

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017) ........................................................................ 11

**Federal Statutes**

35 U.S.C. § 101 ................................................................................. 1, 3, 4, 6, 10, 16, 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 4

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Roku, Inc. ("Roku") hereby moves to dismiss Plaintiff ESW Holdings, Inc.'s ("ESW") Original Complaint ("Complaint") (Dkt. No. 1) for failure to state a claim due to the assertion of patents that fail to claim patent eligible subject matter under 35 U.S.C. § 101.

## I.    SUMMARY

ESW filed its Complaint against Roku alleging infringement of five separate patents by a wide range of Roku's product offerings. Roku brings the instant Rule 12(b)(6) Motion because at least the claims of asserted U.S. Patent Nos. 7,430,718 ("the '718 Patent") and 9,420,349 ("the '349 Patent") are patent ineligible under 35 U.S.C. § 101.[1] In particular, the asserted claims of the '718 Patent attempt to monopolize the fundamental practice of creating and storing templates which users can use to create their own designs. And the asserted claims of the '349 Patent are directed to the conventional practice of receiving data, comparing data, and taking action based on that comparison. As claimed in both the '718 and '349 Patents, these business practices – which have long been performed by humans – are merely carried out by conventional functionalities of generic computers. The claims do not address or solve any unique technological problem or otherwise improve computing to overcome their abstract nature. Accordingly, under the Supreme Court's framework established in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the '718 and '349 Patents are invalid for lack of patentable subject matter.

---

[1] Roku does not waive any defenses or claims it may have against any of the asserted patents, including but not limited to under 35 U.S.C. § 101.

**II. THE '718 AND '349 PATENTS ARE DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER**

**A. Factual Background**

**1. The '718 Patent**

The '718 Patent includes two independent claims (claims 1 and 4), although ESW specifically asserts only claim 1 in its Complaint. *See* Complaint, ¶ 73. Claim 1 is directed to a "system for creating interactive television applications," and claim 4 is directed to a "graphical user interface (GUI) residing on a computer-readable medium for creating interactive television applications." In short, the '718 Patent is simply directed to creating templates of information that a user can access, change, and save. As clearly evident from placing claims 1 and 4 side-by-side, both are similar in scope, with claim 1 also including three generic computer components ("a display," "a user interface," and "a processor"). *See* '718 Patent, claims 1 and 4. Although Roku will focus on claim 1 of the '718 Patent in its patent ineligibility analysis below, that analysis equally applies to claim 4. As will be further discussed below, claim 1's inclusion of general computer components does not confer eligibility onto its abstract idea. *See Fairwarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d. 1089, 1096 (Fed. Cir. 2016) (citation omitted).

**2. The '349 Patent**

The '349 Patent includes three independent claims (claims 1, 7, and 13), although ESW specifically asserts only claim 7 in its Complaint. *See* Complaint, ¶ 46. Claims 1 and 7 are method claims, and claim 13 is a system claim. Each is directed to the same idea of "monitoring a media stream and selecting an action." In short, the claims pertain to receiving media content objects (*e.g.*, a still image), mathematically calculating a value ("fingerprint") of a received media object, comparing the value in a database to determine an "action" associated with that value, and then executing that "action" in accordance with stored instructions. *See, e.g.*, '349

Patent, Fig. 4. As evident from reviewing claims 1, 7, and 13, claims 1 and 7 are method versions of the recited system in claim 13. Although Roku will focus on claim 7 of the '349 Patent in its patent ineligibility analysis below, that analysis equally applies to claims 1 and 13.

## B.    Applicable Law

### 1.    Abstract Ideas Are Not Patentable

Patent eligibility is defined by § 101 of the Patent Act, which provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. In construing the scope of this section, the Supreme Court has recognized certain exceptions: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The abstract ideas exception includes mental processes and traditional ways of analyzing information, "[f]undamental economic practice[s] long prevalent in our system of commerce," "longstanding commercial practice[s]," and "method[s] of organizing human activity." *Alice*, 134 S. Ct. at 2356; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011); *Fairwarning IP*, 839 F.3d. at 1097.

### 2.    Patent Eligibility Is Determined Using The Two-Step Test In *Alice*

Following *Alice*, courts apply a two-step framework to decide whether claims are patent eligible. The first step is to "determine whether the claims at issue are directed to . . . patent-ineligible concepts," such as abstract ideas. *Alice*, 134 S. Ct. at 2355. "The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (internal citations omitted). For computer-based claims, this first step asks whether the claims focus on a "specific means or method that

improves the relevant technology," which may pass muster under § 101, or on a "result or effect that itself is the abstract idea and merely invoke generic processes and machinery," which cannot. *Apple Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (internal citations omitted).

If the claims are directed to an abstract idea, then the inquiry proceeds to a second step. In step two, the court must consider the elements of the claim both individually and as an ordered combination to determine whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. To survive the second step, a claim must include "additional features" ensuring that the claim does "more than simply stat[e] the abstract idea while adding the words apply it." *Id.* at 2357 (quotations, citation and brackets omitted). A claim that adds only "well-understood, routine, conventional activity" does not constitute an "inventive concept." *Mayo Collaborative Servs. v. Prometheus La*bs., 132 S. Ct. 1289, 1294 (2012); *see also Alice*, 134 S. Ct. at 2358 ("[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").

### 3. Rule 12(b)(6) Based On 35 U.S.C. § 101 Permits Dismissal

Patent eligibility under § 101 is ultimately a question of law. *Berkheimer v. HP Inc*., 881 F.3d 1360, 1365 (Fed. Cir. 2018). It is a "threshold" issue considered before other conditions of patentability. *See Bilski v. Kappos*, 561 U.S. 593, 602 (Fed. Cir. 2010). Accordingly, the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." [2] *Cleveland Clinic Found. v. True Health*

---

[2] Patent ineligibility at the pleading stage may be determined from examining the patents themselves. *See Alice*, 134 S. Ct. at 2356; *Affinity Labs of Texas LLC v. Amazon.com Inc*., Case No. 6:15-cv-0029-WSS-JCM, 2015 WL 3757497, at *5 (W.D. Tex. June 12, 2015); *see also OIP*

*Diags.*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). Indeed, early resolution serves to "spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL, Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring).

### C. Argument

#### 1. The '718 Patent Is Patent Ineligible

##### a. *Alice* Step One – The '718 Patent Is Directed To An Abstract Idea

The '718 Patent, issued in 2008, is about allowing "a designer to specify how the [development] environment will appear and function for an end user." '718 Patent, col. 2, ll. 13-15. The patent goes on to state that it "is applicable in any context where a computer-mediated task process is performed. In particular, any development environment in which data can be presented or modified through a number of different views is appropriate for this invention." *Id.* at col. 2, ll. 15-19. As such, and as its claims recite, the '718 Patent is directed to the business practice of creating different templates for different applications – namely, in the context of the '718 Patent, "interactive television applications."

But the process of creating templates and arrangements of information selectable and changeable by a user has been around for centuries, since at least the mid-15[th] century when

---

*Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (explaining that the Court should consider "the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice."). At the motion to dismiss stage all well-pleaded facts are accepted as true and viewed in the light most favorable to plaintiff. However, "[t]o avoid dismissal, the pleadings must show 'specific facts, not mere conclusory allegations.'" *Affinity Labs*, 2015 WL 3757497, at *3 (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)). The Court is not obligated to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions," *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002), "'naked assertions devoid of further factual enhancement,'" *Doe v. Robertson*, 751 F.3d 383, 387 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), or "unwarranted deductions," *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal citation omitted).

Johannes Gutenberg introduced the printing press to Europe. The printing press provided a layout for print media, which an individual could use to select and change elements (*e.g.*, text, pictures) for a customized publication. Such long-standing, well-known methods and business practices involving the mere organization and modification of information are not patentable. *See Alice*, 134 S. Ct. at 2356 (mitigating settlement risk); *Bilski*, 561 U.S. at 611-12 (hedging); *Morales v. Square, Inc*., 75 F. Supp. 3d 716, 724-26 (W.D. Tex. 2014) ("a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice.").

Courts have consistently found that generic organization of information into templates is the type of organizational practice that typically falls within the proscription of § 101. *See, e.g., Hyper Search LLC v. Facebook, Inc.*, No. 1:17-cv-01387, 2018 WL 6617143 (D. Del. Dec. 17, 2018) (holding that claims were directed to the "abstract idea of storing a template, creating a document based on that template, and storing the document for access by the public"). Indeed, humans performed the abstract idea of creating templates of information claimed in the '718 Patent long before the advent of computers, which indicates that the claims are directed to an abstract idea. *See Intellectual Ventures I, LLC v. Symantec Corp*., 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("[W]ith the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with a pen and paper."). As shown below, humans have conventionally performed (and routinely have by hand) the recited elements in claim 1 of the '718 Patent:

| Claim 1 | | Abstract Idea |
|---|---|---|
| [1a][3] | A system for creating interactive television applications, the system comprising: | The preamble is non-limiting and does not confer eligibility. It merely recites an intended use or the application for the ineligible subject matter recited in the body of the claim. Notably, "interactive television applications" is nowhere |

---

[3] Bracketed claim element numbers have been added for ease of reference.

| Claim 1 | | Abstract Idea |
|---|---|---|
| | | interlineated with the elements in the claim body. |
| [1b] | a template author system comprising: | Humans conventionally and routinely have created or authored templates of information for others to use. |
| [1c] | a display; | A computer "display" is a highly generic computer component which has no impact on the patentability of the otherwise ineligible idea recited in claim 1. *See Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-CV-00625-RWS, 2015 WL 10791906, at *4 (E.D. Tex. Aug. 19, 2015) ("Mere organization of data, on a computer or otherwise, is abstract.") (citing *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014)).<br><br>Such generic components are further discussed below, but are ultimately irrelevant in determining whether claim 1 is directed to an abstract idea. |
| [1d] | a user interface; and | A "user interface" is simply a generic computing component that does not confer eligibility. *See* claim element [1c] discussion *supra*. |
| [1e] | a processor coupled to the display and the user interface, the processor comprising: | A "processor" is simply a generic computer component that does not confer eligibility. *See* claim element [1c] discussion *supra*. |
| [1f] | a component for presenting a layout window on the display; | The claim recites a generic computer "component" for displaying a layout or simply the confines of the space within which information is presented. |
| [1g] | a component for assigning one or more display elements to the layout window using the user interface; | The claim recites a generic computer "component" for assigning elements to the layout window, which is no more than presenting information (titles, text, art, etc.) with that "layout window." For example, this amounts to inserting a heading bar into the "layout window." |
| [1h] | a component for assigning a placeholder object to at least one of the display elements using the user interface; and | The claim recites a generic computer "component" for allowing the user interface to be used to assign a placeholder or temporary object to one of the display elements. For |

| Claim 1 | | Abstract Idea |
|---|---|---|
| | | example, this amounts to merely inserting placeholder text "Main Heading" for the heading bar in the "layout window" display. |
| [1i] | a component for saving the assigned display elements and placeholder object as a template application; and | The claim recites a generic computer "component" for simply saving information. This is simply saving the template. Humans have routinely saved or stored designs for later use by them or others. Indeed, that almost by definition is what a template is for: to create a baseline so that you do not have to start from scratch each time. |
| [1j] | a episodic creator system comprising: | Like the "template author system" in claim element [1b] *supra*, humans conventionally and routinely have changed information shown or provided in a template. *See* '718 Patent, col. 2, ll. 33-36 ("An episodic creator creates an episodic application by making changes to display elements associated with a presented placeholder object."). |
| [1k] | a display; | *See* claim element [1c] discussion *supra*. |
| [1l] | a user interface; and | *See* claim element [1d] discussion *supra*. |
| [1m] | a processor coupled to the display and the user interface, the processor comprising: | *See* claim element [1e] discussion *supra*. |
| [1n] | a component for presenting a saved template application on the display; | The claim recites a generic computer "component" for presenting a saved template. This is the purpose of creating the template in the first place. |
| [1o] | a component for presenting previously assigned placeholder objects and display elements on the display; | The claim recites a generic computer "component" for presenting the "placeholder objects" that were assigned when creating the template. This is inherent in creating a template – when a human creates and saves a template, the design or layout of that template is what is presented when the template is later accessed. |
| [1p] | a component for selecting a placeholder object using the user interface; | The claim recites a generic computer "component" for allowing the user interface to be used to select a placeholder or temporary object, like the "Main Heading" text in the |

| Claim 1 | Abstract Idea |
|---------|---------------|
| | heading bar discussed with reference to claim element [1h] *supra*. Humans routinely select placeholder objects from a template which can be replaced with desired content – that is the purpose of a template. |
| [1q] a component for recording changes to one of the display elements that is associated with the selected placeholder object; and | The claim recites a generic computer "component" for recording or saving changes to a display element of the template, like the heading bar discussed with reference to claim element [1g] *supra*. For example, one might replace the phrase "Main Heading" in the heading bar with desired text and then save or record those changes to the heading bar. Again, this is what the purpose of a template is – to allow a user to modify and save information. |
| [1r] a component for saving the display elements as an episode application. | The claim recites a generic computer "component" for simply saving the elements of the template. |

Thus, at their core, claims 1 and 4 of the '718 Patent are directed to creating templates of information that can be customized by a user and where that changed set of information can be saved (the episode). And claim 1 merely adds carrying out the abstract idea of the '718 Patent using generic computer components (display, user interface, processor). The '718 Patent's claimed subject matter to basically and generally cover the creation or organization of information that can be then changed by a user simply cannot be held as patentable. *See Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-CV-00625-RWS, 2015 WL 10791906, at *4 (E.D. Tex. Aug. 19, 2015) ("Mere organization of data, on a computer or otherwise, is abstract.") (citing *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014)).

Further, and notably, the "template author system" and "episodic creator system" are merely systems of generic computerized components for creating and using templates as recited

in claims 1 and 4. In other words, the "template author system" and "episodic creator system" elements recited in the claims confer no patentable weight. Rather, based on other recited claim elements, the "template author system" is used to create a storable template. And the "episodic creator system" is used to generate particular "episodes" resulting from user changes of information presented with the template. This is simply akin to the very definition of what a "template" is and what it is used for – a baseline one can modify to create their own design. There is nothing in the claims effectuating more, let alone inventive, structure or purpose than what is conveyed by the very definition of "template."

While the '718 Patent provides some background on the development of user interfaces in template creation – a feature the '718 Patent admits was *well-known* before its filing date ('718 Patent, col. 1, ll. 22-60) – no features of an user interface are recited in the claims. Indeed, the generic "user interface" in claim 1 and generic "graphical user interface" in the preamble of claim 4 confer no patent eligible subject matter. In other words, the recited user interfaces do not change that claims 1 and 4 are directed to an abstract idea. Indeed, courts have held that such generic "user interfaces" do not rescue otherwise abstract ideas.[4]

The dependent claims are also abstract. Claims 2 and 5 are directed to the abstract idea of "updating status" of the various "changes to the display elements" selected by the user. And

---

[4] *See, e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241-43 (Fed. Cir. 2016) (affirming patent ineligibility of claims directed to the ability to generate graphical user interfaces—menus—with certain features); *EMG Tech., LLC v. Etsy, Inc.*, No. 6:16-484, 2017 WL 780648 at *3 (E.D. Tex. Mar. 1, 2017) (finding claims patent ineligible where the abstract idea was the "simplified interface"); *P & RO Sols. Grp., Inc. v. CiM Maint., Inc.*, 273 F. Supp. 3d 699, 708 (E.D. Tex. 2017) (finding claims directed to a user interface through which users could move and manipulate work schedules patent ineligible); *Align Tech. v. 3Shape A/S*, No. 17-1646, 2018 WL 4275632, at *13-*15 (D. Del. Sept. 7, 2018) (distinguishing *Core Wireless* and holding claims including an interactive user display of a patient's teeth as patent ineligible because the claims did not purport to provide a technological improvement to prior systems).

claim 3 merely states that the system of claim 1 can be used across a network, which again is a generic computing component that confers no patentable weight under § 101.

In *Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, the Federal Circuit explained that "meritorious" §101 challenges after *Alice* are "most likely to occur with respect to patent claims that involve implementations of economic arrangements using generic computer technology," as the claims do here with respect to the standard practice of organizing data. 811 F.3d 1314, 1322 (Fed. Cir. 2016). Like in *Mortgage Grader*, the '718 Patent's claims are directed to an "arrangement" implemented using "generic computer technology," as discussed above. "These issues were significant, if not determinative, of the Court's holding in *Alice*." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir. 2017). As in *Inventor Holdings*, "the patent claims here are directed to a fundamental economic practice, which *Alice* made clear is, without more, outside the patent system." *Id.* The '718 Patent claims violate *Alice's* clear proscription against attempting to monopolize fundamental arrangements.

The asserted claims of the '718 Patent are directed to an abstract idea for the additional reason that they are not directed to a specific technological improvement to computer functionality. The claims focus on the abstract idea of creating and storing a template of information that can be changed by a user – the claims do not improve the functionality of a computer.[5] The fact that the specification describes implementing the template creation in the

---

[5] *See Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017); *Affinity Labs of Texas, LLC v. DIRECTV LLC*, 838 F.3d 1253, 1259-60, 1263 (Fed. Cir. 2016) (finding patent directed to an abstract idea where specification lacked technical detail regarding the recited functions); *Electric Power Group, LLC v. ALSTOM SA*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (claims abstract where "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools"); *Versata Dev. Grp. v. SAP Am.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) (invalidating claims where "the claims are not directed to improving computer performance and do not recite any such benefit").

context of "interactive television applications" – an intended use which is recited solely in the preambles of the asserted claims as discussed above – does not rescue the otherwise abstract claims. Merely limiting the '718 Patent's alleged invention to a particular technological environment does "not make [its] abstract concept any less abstract under step one." *Intellectual Ventures I, LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).

Accordingly, the claims of the '718 Patent are clearly directed to the abstract idea of creating and using templates of information and thus fail step 1 of the *Alice* test.

### b. *Alice* Step Two – The '718 Patent Lacks An Inventive Concept

The second step in the *Alice* analysis requires the Court to determine whether the claims "contain[] an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations and citation omitted). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017); *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). Nothing in the asserted claims of the '718 Patent saves the claims under *Alice* step two.

Here, the asserted claims do not recite any inventive concept, but instead merely recite the performance of the abstract idea using previously invented and conventionally used generic computer features such as "a display," "a user interface," "a processor," and "a network." '718 Patent, claims 1, 3, and 4. These are nothing more than generic descriptions of computer components and functions that do not rise to the level of an inventive concept, either individually or as an ordered combination. *See Content Extraction v. Wells Fargo Bank, et al.*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2357 (a computer in a computer-implemented invention "must involve more than performance of 'well-understood, routine [and] conventional activities previously known to the industry'" to be meaningful)). Courts have

repeatedly rejected as non-inventive claims that recite similar generic components.[6] Indeed, the

'718 Patent presents an archaic depiction and description of the claimed "system" for the

practicing the invention:



FIG. 1.

'718 Patent, Fig. 1; *see also id.* at col. 2, ll. 55-59 ("FIG. 1 illustrates a system **20** that includes

computers **22** in communication with a storage device **26** over a public or private data network

**24**. The storage device **26** stores application information that is created and stored by authors and

technicians using the computers **22**."). None of the generic computer components and functions

recited in the '718 Patent claims (or specification) transforms the claimed abstract idea into

"something more." *See Alice*, 134 S. Ct. at 2354.

---

[6] *E.g.*, *Alice*, 134 S. Ct. at 2357-60 (rejecting argument that recitation of a "data processing system," "communications controller," or "data storage unit" conferred patentability); *Fairwarning*, 839 F.3d at 1096 ("non-transitory computer-readable medium" and "microprocessor"); *Affinity Labs of Texas, LLC*, 838 F.3d at 1262 ("graphical user interface"); *Mortg. Grader*, 811 F.3d at 1324-25 ("interface," "network," and "database"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("*e.g.*, a database, a user profile . . . and a communication medium"); *Maxon, LLC v. Funai Corp., Inc.*, Case No. 2017-2139, 2018 WL 1719101, at *2 (Fed. Cir. Apr. 9, 2018) ("processor" and "computer-readable medium").

The specification of the '718 Patent also expressly recognizes that user interface systems and the ability to create templates were neither novel nor limited to a particular type of media content. For example, the '718 Patent makes clear that:

> "As windowing [user] interfaces were developed, an early feature of such interfaces was the ability to move a particular graphical display window about the screen, with the position of the window being remembered from one session to another. As processors became more powerful, operating systems began to provide enhanced opportunities for users to select among various options, such as the font for text display and background colors or images.
>
> Today, most high-end software tools and operating systems allow for substantial amounts of customization by the user, including such features as adding or deleting icons from toolbars, selecting the font face, style and size for text display, selecting graphical color and sharing schemes, and window/sub-window/pane size, position, and stacking order."

'718 Patent, col. 1, ll. 22-36.

It appears from the specification that the patentee believed the "inventive concept" behind the '718 Patent was implementing this template creation process into "interactive television (iTV)." *See id*. at col. 2, ll. 30-32 ("The present invention provides systems, methods and graphical user interfaces for creating interactive television applications."). However, such intended use or specific application of an abstract idea does not render the claims eligible.

First, none of the asserted claims make any meaningful mention of "interactive television applications." Mere inclusion in the claim preamble does not confer eligibility. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) ("A preamble is not regarded as limiting . . . when the claim body describes a structurally complete invention.") (internal quotes and citation omitted). Next, the '718 Patent concedes that user interfaces and template creation were well known even in the context of "interactive television applications." '718 Patent, col. 1, ll. 52-58 ("iTV applications were often designed for reuse. A template application might have

replaceable resources, such as images or text content, and adjustable timing for behavior that is intended to be synchronized with particular program content. An example of such a template application is a play-along game show application[.]"). Thus, even the combination of user interfaces to design templates for interactive television applications was known. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (finding no inventive concept in activities described in the patent's specification as known).

The '718 Patent also speaks to making existing template interfaces more "easy-to-use" and less "complex and daunting." *Id*. at col. 1, l. 61 – col. 2, l. 6. But again, there is no explanation or recitation of any non-conventional or otherwise patent eligible features or steps in the asserted claims – the claims are simply directed to conventionally creating a template with conventional, generic computer components. Further, the specification contains no detailed technical description of some form of novel template creation beyond what was well known in the art. The Federal Circuit has explained that "[a]n inventor is entitled to claim in a patent what he has invented, but no more." *MySpace, Inc. v. Graphon Corp*., 672 F.3d 1250, 1256 (Fed. Cir. 2012). If something is not detailed in the specification, it cannot be something that the patentee invented and cannot serve as an inventive concept. *See id.; Alice*, 134 S. Ct. at 2357-58; *see also Symantec Corp. v. Zscaler, Inc*., Case No. 17-cv-04426-JST, 2018 WL 3537201, at *3 (N.D. Cal. Jul. 23, 2018) (collecting cases finding patents ineligible as a matter of law where the specification is silent on the alleged inventive concept). Because the specification of the '718 Patent discloses no non-conventional algorithm, design, or means of implementing template creation, it must necessarily involve only conventional and routine steps of the type that cannot confer patent eligibility.

In sum, the claims of the '718 Patent do not include any inventive concept that would render any of the claims eligible under § 101.

### 2. The '349 Patent Is Patent Ineligible

#### a. *Alice* Step One – The '349 Patent Is Directed To An Abstract Idea

ESW's Complaint specifically asserts only claim 7[7] of the '349 Patent, which recites (annotations in italicized brackets added):

> 7. A method for monitoring a media content and selecting an action, the method comprising:
>
> receiving a media stream; *[receiving data]*
>
> generating a fingerprint from a portion of the content of the media stream; *[calculating a value of the received data]*
>
> transmitting the fingerprint to a media identifier system; *[sending the value for comparison]*
>
> receiving from the media identifier system a response comprising a plurality of fingerprint-media-object identifiers associated with a plurality of media objects, wherein a reference fingerprint associated with each media object in the plurality of media objects substantially matches the fingerprint; and *[comparing the "fingerprint" value]*
>
> selecting an action based on the plurality of fingerprint-media-object identifiers. *[taking action based on the comparison]*

At its core, and as annotated above, this claim is directed to the bare concept of receiving data, calculating a "fingerprint" value of the received data, comparing the value, and taking action based on that comparison. Under *Alice* step one, this is precisely the type of concept that has been found to be an unpatentable abstract idea.

---

[7] For purposes of this motion, independent claims 1 and 13 of the '349 Patent are similar to claim 7 and should be held ineligible for the same reasons. Further, the dependent claims fail to add any limitations that would render these claims eligible. Instead, the dependent claims merely provide additional detail regarding the "actions" taken as a result of the comparison, but do not add any meaningful improvement or advancement beyond the abstract and conventional elements in claim 7. Accordingly, Roku believes claim 7 is exemplary and representative of the other claims of the '349 Patent.

Claim 7 recites just five generic computerized steps including: (i) receiving data; (ii) generating a "fingerprint" value of the received data; (iii) transmitting the value comparison; (iv) comparing the value; and (v) selecting an action based on the comparison. *See* '349 Patent, Fig. 4; col. 5, l. 16 – col. 6, l. 41. Not only are these steps fundamental computing operations, they can be done entirely by a human either mentally or with pen and paper. *See Intellectual Ventures I, LLC*, 838 F.3d at 1318 ("[W]ith the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with a pen and paper."). The practice of processing received information in order to take responsive action is manifest in nearly every conceivable human activity. These types of basic ideas – even when effectuated by generic computer components – have long been held to be nothing more than abstract.

Indeed, in *Digitech*, the Federal Circuit found that the patent "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine." 758 F.3d at 1350. In so finding, the Federal Circuit noted that the claim "recites an ineligible abstract process of gathering and combining data that does not require input from a physical device," and also does not recite any "use" of the combined data by a physical device. *Id.* at 1351; *see also, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 792 (E.D. Va. 2015) ("It is true that in *Digitech*, the Federal Circuit found the patent invalid chiefly because of a complete absence of concrete components related to the abstract idea."). The '349 Patent is no different – it claims an abstract process of receiving, processing, and taking responsive action on data that is not tied to any device whatsoever. Thus, under *Digitech* alone, it is clear that the asserted '349 Patent claims recite nothing more than an unpatentable abstract idea.

Moreover, in *Content Extraction*, the claims were drawn to the idea of "l) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory," which is substantially similar to the concept recited in the asserted '349 Patent claims. 776 F.3d at 1347. The Federal Circuit found this idea to be abstract, noting that "the concept of data collection, recognition, and storage is undisputedly well-known." *Id.; see also Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding that the claims were directed to the abstract idea of "using categories to organize, store, and transmit information").

Following this precedent, district courts have consistently found concepts similar to those recited in the asserted '349 Patent claims to be abstract. For example, in *Personalized Media Commc'ns, LLC v. Amazon. Com, Inc.*, the district court found several comparable concepts to be ineligible abstract ideas, including generic processes for updating operating instructions, decrypting data, and completing partial instructions. No. 13-1608-RGA, 2015 WL 4 730906, at *4-7 (D. Del. Aug. 10, 2015). In *Intellectual Ventures I LLC v. Erie lndem. Co.*, the district court found that the idea of "gathering, storing, and acting on data based on predetermined rules" is abstract. No. 14-220, 2015 WL 5686643, at *24 (W.D. Pa. Sept. 25, 2015). In *02 Media, LLC v. Narrative Sci. Inc.*, the district court found that the concept of retrieving data from the Internet, organizing the data, and producing an output file is abstract. No. 15-5129, 2016 WL 738598, at *5 (N.D. Ill. Feb. 25, 2016). In *D&M Holdings, Inc. v. Sonos, Inc.*, the district court invalidated a number of patents related to the monitoring and processing of media content – namely audio/visual streams – within a networked media environment as the claims were directed to the abstract idea of "receiving a conventional compressed archive, detecting conventional information about file, archive block, and compression block boundaries within the data stream,

and storing this detected information. No. CV 16-141-RGA, 2017 WL 1395603, at *4 (D. Del. Apr. 18, 2017). These cases (among many others) confirm that the asserted '349 Patent claims are directed to an abstract idea.

### b. *Alice* Step Two – The '349 Patent Lacks An Inventive Concept

Turning to *Alice* step two, the asserted '349 Patent claims lack an inventive concept. The asserted claims do not recite any specific, non-conventional components or steps that go beyond the abstract idea of receiving, processing, and acting on data. *See Alice*, 134 S.Ct. at 2359; *Content Extraction*, 776 F.3d at 1348 (finding that the recitation of "existing scanning and processing technology" did not supply an inventive concept); *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676, 2015 WL 5768938, at *13 (D. Del. Sept. 30, 2015) (finding that the functions of organizing and presenting data were "expressed solely in broad, functional terms" that "amount to 'purely conventional computer activity.'"). In particular, the '349 Patent recognizes that every step of the claimed method and every element of the claimed system can be performed by or using components and technology "known in the art." *See* '349 Patent, col. 5, ll. 24-26 ("[O]ne or more reference fingerprints associated with the media object may be generated according to a fingerprint-generation method known in the art.); *id.* at col. 8, ll. 52-60 ("The reference fingerprint database **130** for storing reference fingerprints may be implemented . . . by other equivalent methods well known in the art. Similarly, the supplementary-content database **150** may be implemented . . . by other data storage and retrieval means well known in the art."); *id.* at col. 9, ll. 19-21 ("Monitoring of the program stream **165** may be performed by any of the well-known monitoring means known in the art").

Not only can every aspect of the asserted claims be accomplished using a variety of different systems and techniques "known in the art," the specification simply describes all claim limitations as being executed by a variety of commercially available hardware and software

components. *See* '349 Patent, col. 4, ll. 56-58 ("[A] computing system, hardware and/or firmware may be created by one of ordinary skill in the art to carry out the various logical functions described herein"). As such, the asserted claims are not tied to ***any*** machine, let alone a specialized one. *See Digitech*, 758 F.3d at 1351. Consideration of the asserted claims as a whole only reinforces the conclusion that these claims recite an abstract procedure for receiving, processing, and acting on data without any inventive concept or point-of-novelty specified in the claim. *See Mayo*, 132 S. Ct. at 1298, 1300 ("simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."). Because the asserted claims do not "do significantly more than simply describe the abstract [idea]" of data processing, the asserted claims are unpatentable under § 101. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

## III.    CONCLUSION

For the foregoing reasons, Roku respectfully requests that the Court dismiss ESW's Complaint for failure to state a claim as to the '718 and '349 Patents because those patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

Date: April 8, 2019                    Respectfully submitted,

By:   */s/ Wasif H. Qureshi*
      Wasif H. Qureshi
      Texas State Bar No. 24048155
      wqureshi@jw.com
      **JACKSON WALKER LLP**
      1401 McKinney, Suite 1900
      Houston, TX  77010
      Telephone: (713) 752-4521

      Blake T. Dietrich
      Texas State Bar No. 24087420
      bdietrich@jw.com
      **JACKSON WALKER LLP**
      2323 Ross Ave., Suite 600
      Dallas, TX  75201
      Telephone: (214) 953-6000

      **COUNSEL FOR DEFENDANT ROKU, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the Court's electronic case filing system, and thus the foregoing document has been electronically served on counsel of record.

                    */s/ Wasif H. Qureshi*
                    Wasif H. Qureshi