IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ESW HOLDINGS, INC., <br> *Plaintiff,* <br><br> v. <br><br> ROKU, INC., <br> *Defendant.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 6:19-CV-00044-ADA |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Roku, Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim filed on April 8, 2019. Docket Number 7. Plaintiff ESW Holdings, Inc. filed a Response on April 22, 2019, and Defendant filed a Reply on April 29, 2019. Docket Numbers 12–13. After considering Defendant's Motion and all relevant filings, the Court finds that Defendant's Motion should be denied.

### I. Background

Plaintiff ESW Holdings, Inc. ("ESW") sued Defendant Roku, Inc. ("Roku") for infringement of U.S. Patent Nos. 7,430,718 ("the '718 Patent") and 9,420,349 ("the '349 Patent"). Roku moves for dismissal on the basis that the asserted patents are invalid as claiming ineligible subject matter under 35 U.C.S. § 101. Roku argues that the '718 Patent's asserted claims attempt to monopolize the fundamental practice of creating and storing templates that users can use to create their own designs. Additionally, Roku argues that the '349 Patent's asserted claims are directed to the conventional practice of receiving data, comparing data, and taking action based on that comparison. Roku also asserts that the patents are invalid because these business practices, which have long been performed by humans, are merely carried out by

1

conventional functionalities of generic computers. Finally, Roku contends that the claims do not address or solve any unique technological problem or otherwise improve computing to overcome their abstract nature. Accordingly, under the Supreme Court's framework established in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), Roku argues that the '718 and '349 Patents are invalid for lack of patentable subject matter. The Court notes that ESW has not proffered proposed claim constructions as happens in some cases where a court is asked to decide a similar motion to dismiss.[1]

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)

---

[1] *Natural Alternatives International, Inc. v. Creative Compounds, LLC.*, Appeal No. 2018-1295 (Fed. Cir. 2019), an opinion authored by Judge Moore and joined by Judge Wallach, in which the Federal Circuit held that the factual allegations in the Complaint, with all reasonable inferences drawn in favor of the patentee, were enough to plausibly establish eligibility.

(quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)); *Altman v. Key Energy Servs., LLC*, No. 2:11-CV-00495-JRG, 2012 WL 4033336, at *2 (E.D. Tex. Sept. 12, 2012). A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)); *Altman*, 2012 WL 4033336, at *1. In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief. *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)). Finally, given that this is a motion to dismiss, the Court will review the '718 Patent, the '349 Patent, and the Complaint to determine whether or not ESW has articulated a claim that would survive a challenge under § 101.

### B. The Clear and Convincing Burden of Proof Regarding § 101

The U.S. Supreme Court ruled in *Commil USA, LLC v. Cisco Systems, Inc.*, that the clear and convincing evidentiary standard applies to all challenges to a patent's validity. 135 S. Ct. 1920, 1928–29 (2015). As such, to support a claim of invalidity, a defendant has the burden to establish all facts "pertinent" to the analysis by clear and convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018); *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986); *Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1346 (Fed. Cir. 2008) ("The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity . . . This burden exists at every stage of the litigation."). In this case, this burden rests on Roku because they are the party asserting invalidity.

### C. Patent-Eligible Subject Matter Under 35 U.S.C. § 101

Patent eligibility under § 101 is traditionally understood as a "threshold" test: the first of multiple challenges to the sufficiency of a patented invention. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 of the Patent Act defines patent-eligible subject matter as follows: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent." 35 U.S.C. § 101. The Supreme Court has held that § 101 includes an implicit exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). This exception addresses the concern that a patent could preempt the "basic tools of scientific and technological work" if a patent claimed a law of nature, natural phenomena, or abstract idea. *Id.* However, a court must not over-generalize a patent's claims because "[a]t some level, 'all

inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). Thus, the Court "must tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.* The Court notes that many of Roku's arguments would more appropriately be addressed under 35 U.S.C. § 103 and 35 U.S.C. § 112(f).[2] The Court does not address these arguments at this time.

The Supreme Court has developed a two-part test to distinguish between patents that "claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, a reviewing court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 218). To make this determination, a court must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017). In the step one inquiry, the Court asks, "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36; *Uniloc USA, Inc. v. ADP, LLC*, 279 F. Supp. 3d 736, 741 (E.D. Tex. 2017). As the Supreme Court has cautioned, we must be careful in this analysis as "too broad an interpretation of this exclusionary principle could eviscerate patent law. "For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71.

---

[2] *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1353 (Fed. Cir. 2016) (Newman, J., concurring) (suggesting that the abstract idea analysis may be better handled as a patentability analysis under §§ 102, 103, or 112).

Second, if the claims are directed to a patent-ineligible concept, the Court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). The additional elements "must be more than 'well-understood, routine, conventional activity.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting *Mayo*, 566 U.S. at 79). However, "even if each claim element, by itself, was known in the art, 'an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.'" *Uniloc USA, Inc. v. Med. Info. Tech., Inc.*, No. 6:16-CV-00463-RWS, 2017 WL 3707439, *2 (E.D. Tex. Mar. 30, 2017) (quoting *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)).

### III. Analysis

**A. Factual Background on the '718 Patent and the '349 Patent**

*1. The '718 Patent*

The '718 Patent includes two independent claims—claims 1 and 4. ESW currently asserts only claim 1 in its Complaint. Compl., ¶ 73. Claim 1 is directed to a "system for creating interactive television applications," and claim 4 is directed to a "graphical user interface (GUI) residing on a computer-readable medium for creating interactive television applications." In short, the '718 Patent is directed to creating templates of information that a user can access, change, and save. The Court has compared claims 1 and 4 side-by-side and finds that they are similar in scope, with claim 1 also including three computer components: "a display," "a user interface," and "a processor." *See* Document Number 1, Ex. D at 70. Roku asserts that the

analysis under § 101 for claim 1 of the '718 Patent regarding its claim for patent ineligibility equally applies to claim 4. Def.'s Mot. at 2.

### 2. The '349 Patent

The '349 Patent includes three independent claims—claims 1, 7, and 13. ESW specifically asserts only claim 7 in its Complaint. Compl., ¶ 46. Claims 1 and 7 are method claims and claim 13 is a system claim. Each claim is directed to the same idea of "monitoring a media stream and selecting an action." In short, the claims pertain to receiving media content objects (*e.g.*, a still image), mathematically calculating a value (a "fingerprint") of a received media object, comparing the value in a database to determine an "action" associated with that value, and then executing that "action" in accordance with stored instructions. *See* Document Number 1, Ex. D at 34. As was made evident after reviewing claims 1, 7, and 13, claims 1 and 7 are method versions of the recited system in claim 13. Although Roku focuses on claim 7 of the '349 Patent in its patent ineligibility analysis, that analysis equally applies to claims 1 and 13. Def.'s Resp. at 3.

### B. '718 Patent Analysis

*1. Alice Step One: The '718 Patent is Not Directed to an Abstract Idea*

"The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854)). The Court is mindful that it "'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at 1313 (quoting *In re TLI Communications LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). Thus, "a court must look to the claims as an ordered combination, without ignoring the

requirements of the individual steps," and determine "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1313–14; *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258–59 (Fed. Cir. 2017) ("[W]e must articulate with specificity what the claims are directed to, and 'ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'"); *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (practical application of tabs for navigating through a three-dimensional spreadsheet not directed to abstract idea); *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) (using conventional bios memory to provide improved security not directed to an abstract idea); *SRI Int'l., Inc. v. Cisco Sys., Inc.*, 918 F.3d 1368 (Fed. Cir. 2019) (monitoring computer network traffic to detect suspicious activity not directed to an abstract idea). During this first step, it is crucial to "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful," because all patents "embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Thales*, 850 F.3d at 1347; *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 71).

The '718 Patent, which was issued in 2008, is about allowing "a designer to specify how the [development] environment will appear and function for an end user." Document Number 1, Ex. D at 2:13–15. The patent goes on to state that it "is applicable in any context where a computer-mediated task process is performed. In particular, any development environment in which data can be presented or modified through a number of different views is appropriate for this invention." *Id.* at 2:15–19. As such, and as its claims recite, the '718 Patent is directed to the

8

business practice of creating different templates for different applications—namely, in the context of the '718 Patent, "interactive television applications."

In *Enfish*, the Federal Circuit reversed the lower court and found that two software-related patents were "directed to an innovative logical model for a computer database" and therefore were patent eligible under 35 U.S.C. § 101. 822 F.3d at 1330. The Court specifically found that the claims at issue were "directed to a specific improvement in the way computers operate . . . ." *Id.* at 1336. For similar reasons, the Court finds that claim 1 of the '718 Patent claims is not directed to an abstract idea. At this motion to dismiss stage, the Court finds that ESW has adequately established that claim 1 is directed to a developer environment that improves the manner in which a user can create an iTV application. The Court also finds that claim 1 adequately recites a specific computer processor configured to have elements used for creating iTV applications. The '718 Patent describes the problems associated with the prior art, and the claims describe an approach that accomplishes a specific, practical, and useful improvement to the processes that existed at the time of the invention. Thus, the claims are not abstract and are therefore patent-eligible subject matter. Like the claims in *Enfish*, "the plain focus of the claim[] is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." 822 F.3d at 1336. Because of the foregoing, the Court finds that the asserted claims of the '718 Patent are not directed to an abstract idea.

  2. Alice *Step Two: The Asserted Claims of the '718 Patent Transform any Potential Abstract Idea into a Patent-Eligible Invention*

The Court now turns to the second step of the § 101 analysis with respect to the '718 Patent. Step two requires the Court to "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than

9

a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (quotation and brackets omitted). Even if the Court concluded that the asserted claims of the '718 Patent were directed to an abstract idea, the Court finds that there are "additional elements [that] 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79).

Roku argues that the asserted claims are too generic and broad to be patent eligible and that there is no inventive concept claimed in the '718 Patent. Roku also asserts that the improved system is described in wholly generic terms. Furthermore, Roku argues that the words "a display," "a user interface," "a processor," and "a network," are nothing more than generic descriptions of computer components and functions that do not rise to the level of an inventive concept. Indeed, Roku describes the '718 Patent as presenting an archaic depiction and description of the claimed system. Def.'s Mot. at 13. Roku submits that the '718 Patent does not disclose or require special-purpose computing equipment in either the claim or in the specification. ESW responds that the asserted claims recite an inventive concept because they provide a limited and specific solution to a technology-related problem. ESW further argues that Roku fails to meet its burden to prove that the asserted claims are routine, conventional, and well-known.

With respect to the Court's analysis under step-two of *Alice*, the Court finds that the '718 Patent claims each contain an inventive concept and Roku's arguments to the contrary, at best, raise disputed issues of material fact, which, according to *Berkheimer*, 881 F.3d 1360 and *Aatrix*, 882 F.3d 1121, preclude granting Roku's Motion. In addition, the Court finds that claim 1 of the '718 Patent provides a specific technological way that is directed to a developer environment that improves the manner in which a user can create an iTV application. In short, the Court finds that

claim 1 of the '718 Patent contains "specific technologic modifications to solve a problem or improve the functioning of a known system," and therefore produces patent-eligible subject matter. *Trading Techs. Int'l Inc. v. CQG, Inc.*, 675 F. App'x. 1001, 1004–05 (Fed. Cir. 2017).

Further, claims "necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer networks" do not merely recite an abstract idea. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Here, the Court is persuaded that the '718 Patent is directed to a technical solution to a technical problem. For example, claim 1 of the '718 Patent does not recite the alleged abstract idea of videoconferencing and then "merely require generic computer implementation." *See Alice*, 573 U.S. at 221. Instead, the '718 Patent describes an implementation of a conventional template creation process into iTV applications. Moreover, the '718 Patent purports to "effect an improvement" in videoconferencing systems technology. *Alice*, 573 U.S. at 225. Finally, even if the Court agreed with Roku that each specific claim element by itself—the claim's modules and policy engine—were routine, conventional, and well-known, the Court would still find that an inventive concept is "found in the non-conventional and non-generic arrangement of [the] known, conventional pieces." *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

In addition, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368. *Id.* Furthermore, this "question cannot be answered adversely to the patentee based on [] sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Aatrix*, 882

F.3d at 1128. Accordingly, an adverse judgment against the patentee is improper when no factual evidence is provided for "whether the claimed invention is well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1368.

The Court finds that at this stage, Roku has not provided evidence in its *Alice* step-two inquiry that the '718 Patent's claimed invention's manner in implementing computer improvements is routine or conventional. *See McRO, Inc.*, 837 F.3d at 1314 ("While the rules are embodied in computer software that is processed by general-purpose computers, Defendants provided no evidence that the process previously used by animators is the same as the process required by the claims."). Roku's Motion will be decided based on the record evidence, which lies in the four corners of the Complaint and its exhibits, and the record evidence clearly establishes problems of the prior art and the '718 Patent's claimed invention's manner of solving those problems. As such, the Court finds that ESW has sufficiently articulated claim elements that reflect a patentable improvement to user interface or technology. Accordingly, even if the Court agreed with Roku that claim 1 of the '718 Patent was directed to an abstract idea, the Court would find that claim 1 of the '718 Patent remained patent eligible under step-two of the *Alice* test.

### C. '349 Patent Analysis

The Court now turns to the '349 Patent. Here, the dispute focuses on whether claim 7 is representative of claims 1 and 13. Claim 1 recites multiple steps that are taken prior to receiving a media stream that are absent from claim 7. Claim 13 is a systems claim in contrast to claim 7, which is a method claim. Claim 13 also recites specific types of media objects that are not found in claim 7. Plaintiff notes that the '349 Patent issued much later than the '718 Patent—this is important to the analysis under *Alice*. The '349 Patent was examined and issued after *Alice* was

decided, which means that the examination process for the '349 Patent occurred after the PTO had the guidance of the *Alice* decision.

The Court will not repeat the basic law concerning the first step of the *Alice* analysis that is set forth above. The Court finds that claim 7 of the '349 Patent is directed to an improved method of monitoring media content and selecting an action based on this monitoring. The Court also finds that claim 7 recites a particular technical solution for selecting an action to perform when content identification identifies two or more possible sources, which facilitates improvements from prior systems and methods that fail to perform an action when content identification cannot disambiguate between two or more sources. Finally, the Court agrees with ESW that Roku has failed to sufficiently address that claim 7 includes the receiving of a plurality of fingerprint-media-object identifiers and the use of the plurality of fingerprint-media-objects identifiers to select an action.

The Court has considered Roku's reliance on *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F. 3d 1344 (Fed. Cir. 2014). ESW suggests that *Digitech* should not be instructive because it was issued in 2014, before the '349 Patent was issued. The Court understands this argument but has found recent cases where the Circuit has relied on *Digitech*. However, the Court does find persuasive the argument that *Digitech* was limited to claims that differ from the claims of the '349 Patent and specifically, claim 7. The Court has also considered the other cases that Roku proffered and finds that none of them are comparable to the '349 Patent in terms of the improvements that the '349 Patent claims. In addition, the '349 Patent also claims ordered combinations of steps to solve industry problems that are sufficient, in the Court's opinion, to survive Roku's Motion. The Court further finds that claim 7 recites a particular

technical solution to specific problems; therefore, a finding that claim 7 is abstract would be inappropriate.

Roku notes that claim 5 states five steps, but Roku labels them as generic and accuses ESW of bootstrapping references to the specification. The Court finds that Roku's characterization is unfair to what claim 7 discloses and claims, and that these steps performed in the specific ordered manner claimed by the '349 Patent survives an abstract idea challenge. Roku also raises an issue that is often put forth in § 101 motions, which is that the recited steps can be performed by a human. The Court finds that this argument is unpersuasive with respect to the '349 Patent for both reasons proffered by ESW.

The '349 Patent claims an invention related to video streaming and fingerprint creation, but they are also to be performed in an ordered combination. *McRO*, 837 F.3d at 1313; *see*, page 9 of this Order above. As such, the Court finds that claim 7 of the '349 Patent is patent eligible because the claimed invention, taken as an ordered combination, involves specific and unconventional steps that amount to "significantly more" than the judicial exception. As with the '718 Patent, the Court finds that even if claim 7 were directed to an abstract idea, the Court would find that it adds an inventive concept that makes claim 7 patent eligible in the second-step of *Alice*.

## IV. Conclusion

Because the Court does not find that the asserted claims of the Patents-in-Suit are directed to patent-ineligible subject matter under 35 U.S.C. § 101, Plaintiff's Complaint states plausible claims for relief. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss.

**SIGNED** this 13th day of May 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE