IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ESW HOLDINGS, INC., § § Plaintiff / Counterclaim-defendant, § § v. § § ROKU, INC., § § Defendant / Counterclaim-plaintiff. § § | CIVIL ACTION NO.: 6:19-CV-44-ADA JURY TRIAL DEMANDED PATENT CASE |

**PLAINTIFF ESW HOLDINGS, INC.'S RESPONSE TO DEFENDANT ROKU, INC.'S MOTION TO STRIKE ESW'S EXPERT ERRATAS**

Plaintiff ESW Holdings, Inc. ("ESW") hereby files its response to Defendant Roku, Inc.'s ("Roku") Motion to Strike the Errata of ESW's experts. [*See* Dkt. No. 80 ("Roku's Motion").] In support thereof, ESW would respectfully show the Court as follows:

### I.     INTRODUCTION

In its Motion, Roku seeks to exclude the errata of ESW's infringement expert, Dr. Shamos, and ESW's damages expert, Mr. Reading, because they purportedly contain "new" opinions that were not timely disclosed. Roku's Motion is without merit, and should be denied in its entirety.

To be clear, ***there are no new opinions*** in the errata served by Dr. Shamos or Mr. Reading. With respect to Dr. Shamos, his errata merely contains corrections to inaccuracies and oversights identified in the lead up to his deposition. Because these corrections clearly fall within the scope of Rule 26(e), Dr. Shamos was obligated to supplement them. And because he did so in a timely manner, there is no basis to strike his errata. Roku's contrary contention—that the corrections

represent "new" opinions—is entirely unsupported by explanation, analysis, or authority in its Motion. Accordingly, Roku's request to strike Dr. Shamos's errata should be denied.[1]

With respect to Mr. Reading, the portion of his errata Roku seeks to strike merely adopted and applied an opinion presented by Roku's rebuttal damages expert, Mr. Bone. Not only is this not improper, it is both permissible and typical in Federal Court. Indeed, it is expected that opening and rebuttal experts will review each other's work, and will disagree on some issues, and agree on others. That is exactly what happened here. In the portions of Mr. Reading's errata that Roku seeks to strike, Mr. Reading simply adopted and applied Mr. Bone's royalty rate and provided the resulting calculations. This is not a basis to exclude Mr. Reading's errata, and Roku provides no legal authority or analysis in its Motion to suggest otherwise.

Finally, even assuming, *arguendo*, that either errata somehow contained "new" and "untimely" opinions, there is still no basis for exclusion. As courts have routinely held, exclusion is a "severe" sanction that should be granted "sparingly," and is typically reserved for those cases where late disclosures impact the court's trial date or the opposing party's ability to prepare for trial. There is no such prejudice here. As explained herein, each errata was provided *prior to* the experts' respective depositions, and Roku had ample opportunity to explore them.[2] In these circumstances, courts routinely deny motions to strike, and ESW respectfully submits this Court should do the same.

---

[1] Notably, Roku served its own errata on the eve of the deposition of its damages expert, Dr. Bone, correcting prior inaccuracies and oversights in his report. [*See* Roku Motion at 1.] In response, ESW simply questioned Mr. Bone about his errata during his deposition and has not moved to strike it.

[2] Roku *cannot* and *does not* contest this point. Indeed, with respect to Dr. Shamos, Roku chose to cut his deposition short despite being allotted fourteen hours on the record. Moreover, Roku unilaterally postponed Mr. Reading's deposition by a day after receiving the errata, providing another full day to prepare.

## II.  RELEVANT BACKGROUND

### A.  Dr. Shamos's Report, Errata, and Deposition

Dr. Shamos's infringement report was served on November 13, 2020. [*See* Roku Motion at 1.] Dr. Shamos also provided an invalidity report on December 15, 2020. [*Id.*] After extensive preparation for Dr. Shamos's deposition—which was to span a total of fourteen hours on the record over two days—a number of typos, incorrect citations, and incomplete citations were identified in Dr. Shamos's infringement report. For the sake of precision, and pursuant to obligations set forth in the Federal Rules, an errata to Dr. Shamos's infringement report was provided to Roku *prior to his deposition* to avoid any surprise or prejudice to Roku during its examination of Dr. Shamos.

As to the type of corrections in Dr. Shamos's Errata, all of them fall into one of two categories. [*See* Modified Errata of Dr. Shamos, attached hereto as Ex. 1 ("Shamos Errata").][3] Category 1 (the corrections highlighted yellow in Dr. Shamos's Modified Errata) are merely corrections of incorrect citations, typos, and/or replacement of incorrect wording, etc. For example, the correction to "Exhibit D, Pg 25" was simply changed to correct a typographical error. [*Id.* at 4.] Further, the correction to "Exhibit C, Pg. 58" simply corrects citations to line numbers in the source code. [*Id.* at 3.] However, the function names mentioned in association with the original citations **did not change**, which is true for all changes to the lines of code. Additionally, the correction to "Exhibit G, Pg 2" represents a minor change in language from "source code" to "program code," because program code more accurately reflects the code when it resides on actual infringing components. [*Id.* at 4-5.] In sum, every correction in Category 1 represents similar

---

[3] Dr. Shamos's Modified Errata attached hereto *is the same* as the Errata attached to Roku's Motion, with one exception. Given the number of corrections to be addressed, and for ease of reference, each correction is color-coded to represent one of two categories that each correction falls into. Corrections in Category 1 (highlighted yellow) represent incorrect citations or typographical errors. Corrections in Category 2 (highlighted blue), represent supplemental information that was inadvertently excluded and/or identified by Mr. Bone as incomplete.

changes, and Roku provided no explanation as to how they represent new positions different from those disclosed in Dr. Shamos's report. [*See generally* Roku Motion.]

As for Category 2, these corrections merely supplement information that was identified as incomplete. For example, the correction to "Exhibit G, Pg 2" was corrected to include the words "associated files," which was previously left out." [*Id*. at 5.] Further, the correction to "Exhibit G, Pg 15-16" simply adds "directly" to clarify the potential ambiguity caused by leaving the word out, but does not fundamentally change Dr. Shamos's opinion. [*Id*. at 6.] As with Category 1, none of the changes represent new opinions different from those disclosed in Dr. Shamos's infringement report, and Roku provided no explanation to the contrary in its Motion.

With respect to Dr. Shamos's deposition, he was available for ***two days*** totaling ***fourteen hours on the record*** following the service of his Errata, which was ample time for Roku to address the straightforward corrections therein. Roku, however, cut the deposition short on both days, leaving time on the record unused. [*See* Ex. 2 (Excerpts of Dr. Shamos's Deposition Transcript).]

### B.      Mr. Reading's Report, Errata, and Deposition

Mr. Reading's damages report was served on November 13, 2020. [*See* Roku Motion at 1.] Shortly thereafter, he provided a supplemental report addressing certain technology agreements entered into by Ensequence, a company that previously owned the asserted patents and developed software embodying one or more of the patents. [*See* 12/1/2020 Supplemental Expert Report of Marcus Reading ("Reading Supplement") at ¶¶ 6-12 (attached as Ex. 3).] As explained therein, because the agreements contained terms similar to the royalty splits Roku enters with its channel

partners, they validate the royalty structure for the technology at issue and, at a minimum, provide a reasonableness check on the rates disclosed in Mr. Reading's Report. [*Id*. at ¶¶ 9-12.][4]

On December 16, 2020, Roku's damages expert, John Bone, provided a report rebutting Mr. Reading's Report and Supplement. [*See* Rebuttal Expert Report of John Bone ("Bone Rebuttal"), attached as Ex. 4.] Therein, Mr. Bone considered the Ensequence agreements and provided extensive analysis of them as part of his damages opinions. [*Id*. at ¶¶ 54, 197, 241.] Further, Mr. Bone ultimately adopted the 30% rate reflected in these agreements as an appropriate "upper bound" in negotiations with Roku regarding the asserted patents. [*Id*. at ¶¶ 343, 349.]

Following review of Mr. Bone's Rebuttal, Mr. Reading provided an errata that, among other things, corrected certain calculation errors. [*See* Roku Motion, Ex. 3 ("Reading Errata") at ¶¶ 1-7.] Mr. Reading also adopted Mr. Bone's 30% royalty rate. [*Id*. at ¶¶ 8-10.] To be clear, Mr. Reading provided no new methodology or information that had not previously been considered or analyzed by Mr. Bone. To the contrary, outside of disagreeing about whether the 30% rate should apply to profits versus revenue, Mr. Reading simply adopted Mr. Bone's position and provided revised calculations based on that position. [*See id*. at ¶ 10.]

As for Mr. Reading's deposition, it was scheduled to take place on January 7, 2021, and his Errata was provided the evening before. In response, Roku's counsel unilaterally moved the deposition to January 8, 2021 after receiving the Errata. Putting aside the impropriety of unilaterally moving a scheduled expert deposition, this postponement provided Roku's counsel with an additional full day to prepare to address the three short paragraphs in Mr. Reading's errata

---

[4] In its Motion, Roku asserts Mr. Reading filed his supplement "without leave." [*See* Roku Motion at 1.] As Roku is well aware, however, Mr. Reading had a serious family medical emergency in the week or so leading up to opening report deadlines, which contributed, in part, to the need to supplement. In any event, Roku did not seek to exclude Mr. Reading's Supplement (because it had no basis to do so), and it does not seek to exclude the Supplement in its Motion. [*See generally* Roku Motion.] Thus, the point is moot.

it now seeks to strike in its Motion; paragraphs that, as noted above, included analysis and a royalty rate *provided by Roku's own expert* more than three weeks prior to Mr. Reading's deposition.[5]

### III. APPLICABLE LEGAL STANDARD

#### A. Federal Rule 26(a) and (e)—Expert Reports and Correction/Supplementation

Expert reports are governed by Rule 26, which requires disclosure of a written report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). However, an expert report does not serve as a verbatim transcript of trial testimony; indeed, as a court of this District has observed, Rule 26 "does not limit an expert's testimony simply to reading his report. . . . The rule contemplates the expert will supplement, elaborate upon, [and] explain his report in his oral testimony." *S.E.C. v. Life Partners Holdings, Inc.*, 2013 U.S. Dist. LEXIS 194549, 2013 WL 12076934, at *3 (W.D. Tex. Nov. 8, 2013) (quotation omitted). Further, not only is supplementation expected, there is an *affirmative duty* to supplement or correct if a party learns the report is "incomplete or incorrect," and if the "additional or corrective information" has not otherwise been made known. Fed. R. Civ. P. 26(e)(1)(A); *see Charter Sch. Sols. v. Guideone Mut. Ins. Co.*, No. EP-18-CV-61, 2019 WL 5258055, 2019 U.S. Dist. LEXIS 182690, at *8-9 (W.D. Tex. June 28, 2019).

As to the proper scope of supplementation under Rule 26(e), this Court recently explained:

> The Federal Rules do not define what constitutes a supplemental expert report. Consequently, the line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction . . . depends on the facts of the case. A supplemental report, however, necessarily contains information . . . *not expressed in the original report*, or there would be no need to supplement. This is not to say that supplemental reports provide a back-door means for parties to extend their expert designation and report production deadline. Instead, an expert's initial report must be detailed and complete, and the purpose of supplementary disclosures is just that—to supplement.

---

[5] Mr. Bone's Rebuttal Report, which contains his discussion of the Ensequence agreements and 30% rate, was served on December 16, 2020. [*See* Roku Motion at 1.]

-6-

*Id.* at *5-6 (internal quotations and citations omitted) (emphasis added). Furthermore, the *reason* for serving supplemental information is not dispositive of whether the information is "supplemental" or timely served under Rule 26(e). *See id.* at *7. Instead, if the information merely corrects or supplements underlying opinions in a previously served report, it falls within Federal Rule 26(e). *See id.*; *see also Gibson Brands, Inc. v. Armadillo Distrib. Enters., LLC,* No. 4:19-CV-00358, 2020 WL 6581868, 2020 U.S. Dist. LEXIS 209861, at *8-9 (E.D. Tex. Nov. 10, 2020).

With respect to timeliness of supplemental information, a party must disclose it by the time the party's pretrial disclosures are due, which is thirty days before trial unless otherwise ordered by the court. Fed. R. Civ. P. 26(a)(3); *see also Musket Corp. v. Suncor Energy (U.S.A.) Mktg.*, 2016 WL 7374225, 2016 U.S. Dist. LEXIS 175601, at *10, 33-34 (S.D. Tex Dec. 20, 2016). Here, trial does not begin until April 12, 2021, and pretrial disclosures are not yet due. [*See* Dkt. No. 69.]

**B.     Federal Rule 37—Exclusion of "Untimely" Expert Opinions**

Rule 37 allows for exclusion of evidence if it is not timely produced and it prejudices the opposing party. *See* Fed. R. Civ. P. 37(c). However, even if corrections or supplements are deemed untimely "new opinions," they are not automatically excluded. As courts have repeatedly explained, exclusion is a "harsh" sanction that should be granted "very reluctantly." *Santamaria v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-0692-L, 2006 WL 8436985, at *1-2 (N.D. Tex. Aug. 3, 2006) (excluding expert when party filed initial designation after deadline for both designation and service of report had passed); *see also Betzel v. State Farm Lloyds*, 480 F.3d 704, 709 (5th Cir. 2007) (observing that exclusion of witness testimony is at "the extreme end of the sanction spectrum"); *see also Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 2010 U.S. Dist. LEXIS 104549, *45 (N.D. Ill. Sept. 30, 2010).

In view of the foregoing, courts consider four factors in determining whether to exclude evidence: (1) the party's explanation for its failure to disclose; (2) the prejudice, if any; (3) the

possibility of curing prejudice with a continuance; and (4) the importance of the evidence. *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). And while each factor is important, **_prejudice is the critical consideration_**. *See In re Enron Corp*, No. CIV.A. G-02-0299, 2007 WL 5023541, at *1-2 (S.D. Tex. Feb. 1, 2007) (noting the "preclusion inquiry is mainly upon surprise and prejudice" to prevent "ambush at trial," and whether "a late disclosure is prejudicial depends on whether the expert testimony was unexpected and left the other party without adequate opportunity to prepare for it"; *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (noting exclusion is reserved for those situations where, for example, late disclosure of expert testimony "disrupt[s] the court's discovery schedule and the opponent's [trial] preparation.").[6]

Further, where a party moves to strike "untimely" evidence that it nevertheless had ample opportunity to explore (for example, via deposition) well prior to trial (**_which is precisely the case here_**), courts routinely deny such motions. *See e.g.*, *Musket Corp.*, 2016 U.S. Dist. LEXIS 175601, at *33-34 (denying motion to strike for lack of prejudice, in large part, because the party opposing the evidence was able to explore it via deposition prior to trial); *Langley v. Int'l Bus. Machines Corp.*, No. A-18-CV-443-DAE, 2019 WL 7284946, at *4 (W.D. Tex. Dec. 23, 2019) (same).

## IV.   ARGUMENT

### A.   Dr. Shamos's Errata does not violate Rule 26, and thus there is no basis to exclude it under Rule 37

Dr. Shamos's Errata injects no new opinions into the case, and does not change his original core opinions. [*See* Section II.A., *supra*.] Instead, it merely corrects inaccuracies and oversights (as Roku's own expert, Mr. Bone, did), and therefore his Errata falls squarely within Rule 26(e).

---

[6] *See also Betzel v. State Farm Lloyds*, 480 F.3d 704, 709 (5th Cir. 2007) (noting the Fifth Circuit has routinely reversed the exclusion of late-designated testimony where "the extreme end of the sanction spectrum was imposed against the lowest end of the prejudice spectrum.").

In its Motion, Roku generally asserts, without any detailed analysis or explanation of the actual corrections in the errata, that Dr. Shamos's entire Errata contains new arguments and positions, and should therefore be excluded in its entirety. [Roku Motion at 7.] As an initial matter, Roku cannot succeed in excluding the corrections in Dr. Shamos's Errata by simply calling them "new" opinions in conclusory fashion. Instead, it must explain *how* they are new opinions. Roku fails to do this. More importantly, Roku is wrong. As explained above, Dr. Shamos's Errata does not contain any new opinions. [*See* Section II.A., *supra*.] Because the corrections in Dr. Shamos's Errata fall squarely within Rule 26(e), Dr. Shamos was permitted to supplement them. See *Charter Sch. Sols.*, 2019 U.S. Dist. LEXIS 182690, at *8-9.

As for the two examples of "new" positions actually identified by Roku, there is no basis to exclude them either. In particular, Roku asserts the Errata "includes significant source code evidence revisions that change relied-on source code directories and citations to hundreds of different lines of source code." [Roku Motion at 7.] This statement is misleading, at best. As noted above, certain line numbers were corrected, but the ***functions*** were not, and the corrections do not alter Dr. Shamos's opinions. [See Section II.A., supra.] As for the second example, Roku asserts Dr. Shamos added "new information" to certain corrections, which is improper. [Roku Motion at 7.] Roku is wrong again. As this Court recently explained, a supplement "necessarily contains information . . . not expressed in the original report, or there would be no need to supplement." *Charter Sch. Sols.*, 2019 U.S. Dist. LEXIS 182690, at *5-6. Thus, the question is not whether information is new, but whether it injects new opinions or changes existing opinions. *Id*. Because Dr. Shamos's Errata does neither, the corrections fall within Rule 26(e). *See Charter Sch. Sols.,* 2019 U.S. Dist. LEXIS 182690, at *5-6; *8-9; *see also Charles v. Sanchez,* 2015 U.S. Dist. LEXIS 22752, at *22, 2015 WL 808417 (W.D. Tex. Feb. 24, 2015).

Given the information in Dr. Shamos's Errata clearly constitutes "supplemental" information within Rule 26(e), the only remaining question is whether it was timely. *See Musket Corp.*, 2016 U.S. Dist. LEXIS 175601, at *33-34. Here, trial does not begin until April 12, 2021, and pretrial disclosures are not yet due. [*See* Dkt. No. 69.] Because Dr. Shamos's Errata was served well before these deadlines, not to mention before Dr. Shamos's deposition, there is no basis to exclude it under Rule 37. *See Charter Sch. Sols.*, 2019 U.S. Dist. LEXIS 182690, at *8-9.[7]

### B. **Mr. Reading's Errata does not violate Rule 26, and should not be excluded either**

While Rule 26 requires certain disclosures in an expert report, the report itself does not serve as a verbatim transcript of trial testimony. Indeed, the Rules expressly contemplate an expert "will supplement, elaborate upon, [and] explain . . . his report in his oral testimony." *Life Partners Holdings, Inc.*, 2013 WL 12076934, at *3. Further, the process of developing and articulating expert opinions is flexible enough that even opinions developed during a deposition not expressed in an opening report can be considered. *See e.g.*, *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) ("Technically, all expert disclosures required by Rule 26(a)(2)(B) must be made in the expert's written report. In practice, however, a party is considered to have met its obligations for expert disclosure so long as all required information is divulged in either the written report or a subsequent deposition of the expert." (emphasis added) (citations omitted)).

This process of developing opinions described above and contemplated by the Federal Rules—from opening reports to rebuttal reports to opinions disclosed during depositions—is precisely what played out here. As noted above, Mr. Reading did not develop "new" opinions in

---

[7] In its Motion, Roku further asserts that Dr. Shamos's Errata was spurred by counsel, implying some impropriety as a result. [Roku Motion at 6.] But this makes no sense. Lawyers and experts routinely work together in developing expert reports and related information (particularly in patent cases), and Roku's own lawyers and experts no doubt did the same in this case.

in violation of Rule 26. To the contrary, following his review of Mr. Bone's Rebuttal (which necessarily came after his own report), Mr. Reading simply adopted Mr. Bone's 30% royalty rate.[8] There has been absolutely no change whatsoever to Mr. Reading's opinion or methodology. While Roku asserts Mr. Reading's adoption of part of Roku's own expert's opinion somehow violates the Federal Rules, it cited **no precedent or analysis** in its Motion supporting that position, and ESW has found none either. Accordingly, there is no basis to strike Mr. Reading's Errata.

Moreover, even assuming *arguendo* that Mr. Reading's adoption of Mr. Bone's 30% royalty rate somehow constitutes a violation of Rule 26, that is not a reason to exclude that portion of Mr. Reading's Errata. As discussed above and in more detail below, Mr. Reading's Errata was served prior to his deposition, and Roku had ample opportunity to explore it. Thus, there is no prejudice, and therefore no basis to exclude it.

C. **Even if Dr. Shamos's and Mr. Reading's Erratas contained "new" and "untimely" opinions (they do not), there is no prejudice, and thus no basis for exclusion**

Courts consider four factors in determining whether to exclude evidence under Rule 37: (1) the party's explanation; (2) any prejudice to the party opposing; (3) the possibility of a continuance; and (4) the importance of the evidence. Roku simply ignores most of these factors and merely argues in conclusory fashion it is somehow "prejudiced" by Errata. [Roku Motion at 8.] However, because each factor weighs against exclusion, Roku's Motion must be denied.

With respect to ESW's explanation for late disclosure, for example, Dr. Shamos's Errata was provided after noticing certain errors and omissions, and was done so in accordance with ESW's obligations under Rule 26(e) (as was the errata from Roku's expert, Mr. Bone). As for Mr.

---

[8] Roku attempts to argue in its Motion that the 30% rate applied by Mr. Bone is not a royalty rate. This is untrue. As Mr. Reading testified during his deposition, "[Mr. Bone] is applying a rate of 30% times a base to arrive at a damage number . . . That's the definition of a royalty rate." [*See* Ex. 5 (Reading Deposition Transcript) at 252:5-8.]

Reading, Mr. Bone's 30% rate analysis was provided in rebuttal to Mr. Reading, and therefore could only have been adopted after his opening report.

With respect to a continuance, there is no need, because there is no prejudice. As for the importance of the information, this is a patent infringement case, and precision is important when it comes to explaining infringement to the jury. Damages issues are also important, and here, the jury is entitled to know there is some material measure of agreement between the parties' experts as to Mr. Bone's 30% rate.

Finally, prejudice is the key consideration in a motion to exclude. Yet in its Motion, Roku provides no explanation whatsoever as to how it was actually prejudiced. [Roku Motion at 7-8.] This is because it was not. As explained above, each Errata was provided *prior to* the respective experts' depositions, and Roku had ample opportunity to explore them.[9] In such cases, courts routinely reject motions to exclude, and this Court should do the same. *See e.g.*, *Musket Corp.*, 2016 WL 7374225, at *10; *Langley*, 2019 WL 7284946, at*4 (same).[10]

In sum, this is not a case where a party injects new opinions and information on the eve of trial. Instead, it's the opposite: Dr. Shamos's and Mr. Reading's Errata were provided to Roku before their depositions, and Roku had ample opportunity to explore them. Accordingly, Roku's Motion should be denied.

## V. CONCLUSION

For the reasons set forth herein, ESW respectfully requests the Court deny Roku's Motion in its entirety.

---

[9] Indeed, the portion of Mr. Reading's Errata that Roku seeks to exclude includes analysis from Roku's own expert, Mr. Bone. Thus, the notion Roku would somehow be prejudiced is nonsensical.

[10] *See also Sparling v. Doyle*, 2015 U.S. Dist. LEXIS 97204, at *18-19, 2015 WL 4528759 (W.D. Tex. July 27, 2015) (same); *AMX Corp. v. Pilote Films*, 2007 U.S. Dist. LEXIS 45357, at *8-9, 2007 WL 1813770 (N.D. Tex. June 22, 2007) (same); *PerdiemCo, LLC v. IndusTrack LLC*, No. 215CV00727JRGRSP, 2016 WL 8188948, at *2 (E.D. Tex. Oct. 25, 2016); *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 2010 WL 3894444, 2010 U.S. Dist. LEXIS 104549, at *45-46 (N.D. Ill. Sept. 30, 2010) (same).

Dated: January 19, 2021

Respectfully submitted,

**BRACEWELL LLP**

*/s/ Conor Civins*
Conor M. Civins
Texas Bar No. 24040693
conor.civins@bracewell.com
Michael Chibib
Texas Bar No. 00793497
michael.chibib@bracewell.com
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Telephone:  (512) 472-7800
Facsimile:   (800) 404-3970

***Counsel for Plaintiff ESW Holdings, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been electronically served to all counsel of record pursuant to the Federal Rules of Civil Procedure on January 19, 2021.

*/s/ Conor M. Civins*
Conor M. Civins