# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **ESW HOLDINGS, INC.,** | § | |
| | § | |
| *Plaintiff / Counterclaim-defendant,* | § | **CIVIL ACTION NO.: 6:19-CV-44-ADA** |
| **v.** | § | |
| | § | |
| **ROKU, INC.,** | § | |
| | § | |
| *Defendant / Counterclaim-plaintiff.* | § | |

## <u>ROKU'S MOTIONS *IN LIMINE*[1,2]</u>

Pursuant to Fed. R. Evid. 103, Roku hereby submits its Motions *in Limine* for the upcoming jury trial in this case.

Roku's MILs 1, 6, and 17 are agreed to by ESW. The remaining, Roku MILs 2–5 and 7–16, are opposed.

A complete listing describing Roku's MILs is provided in the following Table of Contents, with Roku's arguments as to the opposed MILs following.

---

[1] Citations to filed documents are with respect to the court-stamped page numbers in the header if present.

[2] Roku's herein cited pending motions and related briefing are hereby incorporated by reference.

# TABLE OF CONTENTS

MIL1:   Argument, Suggestion, Documents, Testimony, Or Other Evidence Regarding Indirect Infringement…………………………………………………………….**AGREED**

MIL 2:   Argument, Suggestion, Documents, Testimony, Or Other Evidence Regarding Divided Infringement. ......................................................................................................... 1

MIL 3:   Argument, Suggestion, Documents, Testimony, Or Other Evidence Regarding Willful Infringement.................................................................................................................. 1

MIL 4:   Argument, Suggestion, Documents, Testimony, Or Other Evidence That Roku Knew Of Any Of The Asserted Patents Prior To Suit............................................................ 2

MIL 5:   No Reference Or Suggestion That Roku Copied Ensequence Products Or Processes .. 3

MIL 6:   No Reference To Other Roku Cases, Litigations, Or Disputes, Or Events Or Evidence Therein………………………………………………………..……………...**AGREED**

MIL 7:   Argument, Suggestion, Documents, Testimony, Or Other Evidence By Marcus Reading About The Following Agreements Being Technologically Comparable To One Or More Of The Asserted Patents: Ensequence-Game Show Network Agreement (ESW_013946); Ensequence-Univision Networks & Studios, Inc. Agreement (ESW_013969); And Ensequence-Pop Media Networks Agreement (ESW_013983). 4

MIL 8:   Any Expert Opinions Not Contained In The Expert's Respective Expert Report(s).... 4

MIL 9:   No Expert Witness Testimony From Individuals Other Than Those Expert Witnesses Who Have Been Properly Designated And Admitted As Such At Trial. ..................... 6

MIL 10:  Any Implied Or Express Suggestion That Roku Damages Expert John Bone Espoused, Adopted, Applied, Or Arrived At A 30% Reasonable Royalty Rate. ........................... 7

MIL 11:  Any Testimony Or Evidence From ESW Expert Marcus Reading As To A 30%, 15%, 3%, 2%, or 6% Reasonable Royalty Rate. ................................................................. 7

MIL 12:  Any Corporate Testimony That ESW Objected To Providing, Refused To Provide, Or Could Not Provide During Deposition. ........................................................................ 8

MIL 13:  Any Testimony Not Provided In Deposition Due To A Claim Of Attorney Client Or Work Product Privilege. .............................................................................................. 9

MIL 14:  No Reference To Roku's Overall Revenues Or Profits (Except As Needed To Establish Royalty Base(s) For Damages Purposes), Or Implied Or Express Suggestion That Sought Damages Is Relatively Small Compared To Roku's Overall Revenues Or Profits. ........................................................................................................................ 9

MIL 15:  Argument, Suggestion, Documents, Testimony, Or Other Evidence Regarding Quantity

            Of Roku Player Devices Sold. ...................................................................... 10

MIL 16:   No Extraneous Statement During Closing That Is Unrelated To The Evidence
            Presented Or A Disputed Issue That Is Designed Primarily To Illicit An Emotional
            Juror Response. .......................................................................................... 10

MIL 17:   No Statements Regarding The Outcome Of Any Motions Or Discovery Disputes
            Between The Parties In This Case…………………………………………...**AGREED**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adv. Tech. Incubator, Inc. v. Sharp Corp.*,
    2010 U.S. Dist. LEXIS 145630 (E.D. Tex. Mar. 31, 2010)........................................................5

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc)...............................................................................1

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002)...............................................................................................3

*Centillion Data Sys., LLC v. Qwest Commc'ns, Int'l*,
    631 F.3d 1279 (Fed. Cir. 2011)...............................................................................................1

*Cybergym Research, LLC v. ICON Health & Fitness, Inc.*,
    No. 2:05-CV-527 (DF), 2007 WL 9724237 (E.D. Tex. Oct. 7, 2007) ...................................6

*Finalrod IP, LLC, et al. v. John Crane, Inc., et al.*,
    No. MO 15-CA-097 ADA, Hrg. Tr. (W.D. Tex. Feb. 21, 2020)..............................................5

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 13-CV-03999-BLF, 2015 WL 4129193 (N.D. Cal. July 8, 2015).....................................3

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
    392 F.3d 1317 (Fed. Cir. 2004)...............................................................................................4

*Orchestrate HR, Inc. v. Trombetta*,
    No. 3:13-CV-2110-KS, 2017 WL 273669 (N.D. Tex. Jan. 20, 2017)......................................2

*Personalized User Model, LLP v. Google Inc.*,
    Case No. 09-525-LPS, Dkt. 606 (D. Del. Feb. 27, 2014).........................................................3

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
    725 F.3d 1377 (Fed. Cir. 2013)...............................................................................................5

*Stinson Air Ctr., LLC v. XL Specialty Ins. Co.*,
    No. CIV. SA-03-CA-61-FB, 2005 WL 5979097 (W.D. Tex. July 8, 2005) ............................7

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*,
    No. 9:09-CV-176, 2011 WL 7563868 (E.D. Tex. Sept. 23, 2011)...........................................5

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..............................................................................................10

*Witt v. Chesapeake Exploration, L.L.C.*,
    2011 U.S. Dist. LEXIS 76033 (E.D. Tex. July 13, 2011).........................................................5

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................2, 5, 6, 7

Fed. R. Civ. P. 37(c)(1) ............................................................................................2, 5, 8, 9

Fed. R. Evid. 401 ..........................................................................................................10

Fed. R. Evid. 402 ..................................................................................................1, 2, 4, 10

Fed. R. Evid. 403 ................................................................................................ *passim*

Fed. R. Evid. 701 ..............................................................................................................6

Fed. R. Evid. 702 ........................................................................................................6, 8

## **TABLE OF EXHIBITS**

Exhibit 1     Excerpts from ESW's November 6, 2020 First Amended and Supplemental Responses to Roku's First Set of Interrogatories

Exhibit 2     Excerpts from Roku's August 17, 2020 Responses to ESW's First Set of Interrogatories

Exhibit 3     Excerpts from the October 20, 2020 Deposition of ESW Holdings, Inc. (Fed. R. Civ. P. 30(b)(6) corporate representative Neeraj Gupta) and Neeraj Gupta individually ("Gupta Dep. Tr.") **[FILED UNDER SEAL]**

Exhibit 4     Excerpts from the November 9, 2020 Deposition of ESW Holdings, Inc. (Fed. R. Civ. P. 30(b)(6) corporate representative Larry Westerman) and Larry Westerman individually ("Westerman Day 1 Dep. Tr.") **[FILED UNDER SEAL]**

Exhibit 5     Excerpts from the November 10, 2020 Deposition of ESW Holdings, Inc. (Fed. R. Civ. P. 30(b)(6) corporate representative Larry Westerman) and Larry Westerman individually ("Westerman Day 2 Dep. Tr.") **[FILED UNDER SEAL]**

**MIL 2:     Argument, Suggestion, Documents, Testimony, Or Other Evidence Regarding
         Divided Infringement.**

As set forth in Roku's summary judgment briefing, ESW has failed to state a legally

cognizable claim for divided infringement as to any asserted patent. *See, e.g.*, Dkt. 73 at 10–11 (Dr.

Shamos failed to provide any analysis or opinion with respect to any divided infringement of the

'782 Patent by Roku); Dkt. 75 at 5 (no direct infringement claim as to either the '718 or '945

Patents to which divided infringement could be applied); *see also id.* at 10–11 (no evidence or

opinion that Roku directs or controls third party developers); Dkt. 87 at 3–10 (no evidence that

Roku directs or controls third parties whom Dr. Shamos identifies as performing claimed steps or

putting system components in operation regarding the '349 and '294 Patents); Dkt. 104 at 4–5 ('782

Patent); Dkt. 105 at 4–5 ('718 and '945 Patents); Dkt. 106-1 at 1–3 ('349 and '294 Patents).

Roku therefore requests that the Court exclude any argument, suggestion, documents,

testimony, or other evidence regarding divided infringement—specifically, Roku requests that the

Court exclude any testimony or argument that a third party's performance of any method step or

operation of any component of a claimed system should be attributed to Roku as irrelevant and

misleading to the jury. Fed. R. Evid. 402, 403; *see also Akamai Techs., Inc. v. Limelight Networks,

Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (defendant can only be held liable for other's

performance of method steps if the defendant directs or controls the third party or the actors formed

a joint enterprise); *Centillion Data Sys., LLC v. Qwest Commc'ns, Int'l*, 631 F.3d 1279, 1287 (Fed.

Cir. 2011) (requiring direction or control by defendant over third party use of a claimed system in

order to find direct infringement of system claims).

**MIL 3:     Argument, Suggestion, Documents, Testimony, Or Other Evidence Regarding
         Willful Infringement.**

There are no pled or justifiable allegations of willful infringement in this case. At the end of

each patent-specific "Count" in its Complaint, ESW concluded that "ESW reserves its right to seek

leave to amend its complaint if, after discovery, facts are uncovered that substantiate a finding of willful infringement." *See* Dkt. 1 at ¶¶ 44, 57, 70, 83, 95. **But ESW never amended its Complaint** and thus the issue of willful infringement is not relevant to any triable issue and would only serve to confuse the jury. FED. R. EVID. 402, 403. Not to mention that there is no evidence that Roku had pre-suit knowledge of the asserted patents, ESW, or Ensequence.[3]

Moreover, ***ESW chose not to provide any substantive response to Roku's interrogatory as to any charge of willfulness*** and instead merely mustered that the asserted patents were in the public record (which is so in any patent case). *See* <u>Exh. 1</u> (ESW's First Amended and Supplemental Responses to Roku's First Set of Interrogatories), at 14 (ESW providing no substantive response to request for "complete factual basis for any contention that Roku has willfully infringed or is willfully infringing the Patents-in-Suit").[4] *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information [] required by Rule 26(a) or (e), the party is not allowed to use that information [] at a trial, unless the failure was substantially justified or is harmless."); *see Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-KS, 2017 WL 273669, at *2 (N.D. Tex. Jan. 20, 2017) (granting motion *in limine* to exclude undisclosed evidence). Thus, it would be highly prejudicial to permit ESW to raise unpled and undisclosed allegations of willfulness at trial.

**MIL 4:    Argument, Suggestion, Documents, Testimony, Or Other Evidence That Roku Knew Of Any Of The Asserted Patents Prior To Suit.**

It is undisputed that Roku first became aware of the asserted patents upon receipt of the Complaint on or after February 8, 2019. Roku has provided discovery responses and deposition testimony so stating. *See* <u>Exh. 2</u> (Roku's Responses to ESW's First Set of Interrogatories), at 5 ("Roku responds that on information and belief it became aware of the asserted patents no earlier

---

[3] Ensequence was the original assignee of the asserted patents. Its assets were bought out of bankruptcy by ESW shortly before this case.

[4] Documents in Roku's production about Ensequence were post-suit collected online by counsel.

than when ESW filed its Original Complaint (Dkt. 1) in this litigation on February 8, 2019."). This alone warrants exclusion of any allegations of pre-suit knowledge.

Moreover, because inducement and willfulness are not issues in this case,[5] any allegation of pre-suit knowledge is "irrelevant to this phase of the trial." *See Personalized User Model, LLP v. Google Inc.*, Case No. 09-525-LPS, Dkt. 606, at 8 (D. Del. Feb. 27, 2014). Any such allegation would thus only confuse the jury and prejudice Roku. Fed. R. Evid. 403.

**MIL 5:     No Reference Or Suggestion That Roku Copied Ensequence Products Or Processes.**

There is no evidence or suggestion in this case—and ESW cites to none—that Roku was aware of Ensequence prior to this suit, let alone "copied" its failed technology. The only reason for ESW to introduce unsubstantiated and irrelevant allegations of copying at trial would be to inflame and confuse the jury. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) ("[copying] is of no import on the question of whether the claims of an issued patent are infringed"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015) ("there is significant prejudice associated with this evidence, as a jury may use evidence of copying [which there is none in this case] to unfairly conclude that Defendant's products *infringe* the patents-in-suit") (emphasis original).

During the meet-and-confer regarding these MILs, ESW suggested it might agree if this motion was modified to state that Roku did not copy "specific" products or processes. But this is not a reasonable compromise because ESW has no evidence whatsoever related to any copying by Roku. It does not make sense how ESW could allege that Roku generally copied Ensequence, but agree that Roku did not copy any "specific" products or processes. Moreover, the Federal Circuit has held that "copying requires evidence of efforts to replicate ***a specific product***, which may be

---

[5] *See* Roku MILs 1 and 3 *supra*.

demonstrated through internal company documents, direct evidence such as disassembling a

patented prototype, photographing its features, and using the photograph as a blueprint to build a

replica, or access to the patented product combined with substantial similarity to the patented

product." *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004)

(emphasis added). ***No such specific evidence exists in this case.*** This ends any dispute.

**MIL 7:**   **Argument, Suggestion, Documents, Testimony, Or Other Evidence By Marcus Reading About The Following Agreements Being Technologically Comparable To One Or More Of The Asserted Patents: Ensequence-Game Show Network Agreement (ESW_013946); Ensequence-Univision Networks & Studios, Inc. Agreement (ESW_013969); And Ensequence-Pop Media Networks Agreement (ESW_013983).**

Reference to these agreements by ESW's damages expert Marcus Reading should be

excluded for multiple reasons: (i) he admitted the agreements were not comparable; (ii) ESW failed

to establish the technological comparability of the agreements—its technical expert Dr. Michael

Shamos never saw and had no opinion regarding the agreements; and (iii) the agreements are

admittedly not relevant to the hypothetical negotiation between Ensequence and Roku. Dkt. 88,

Exh. 1 (Reading Damages Rep.), ¶ 124 ("it is my opinion that [the Ensequence] agreements are not

relevant to the determination of a reasonable royalty rate"); Dkt. 93-2 (Reading Supplemental

Expert Report), ¶ 8 ("these agreements do not necessarily provide a specific comparable license or

royalty rate to the license being considered at the hypothetical negotiation dates for the RDE Patents

or the MWTW Patents"), ¶¶ 9–12 (discussing these agreements as a "reasonableness check"); Dkt.

77-9 (Shamos Dep. Tr. Vol. 1), 248:18–249:13 (Dr. Shamos had not heard of these agreements); *see

also* Dkt. 107-1 (Reading Dep. Tr.), 216:18–24 (admitting he did not provide the "reasonableness

check" discussion of the Ensequence agreements in his original report). For these reasons, any

probative value of these three agreements is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, and the risk of misleading the jury. Fed. R. Evid. 402, 403.

**MIL 8:**   **Any Expert Opinions Not Contained In The Expert's Respective Expert Report(s).**

Despite this Court's practice that an expert's testimony at trial be limited to the content of his/her report(s), ESW does not agree to this MIL. *See, e.g.*, *Finalrod IP, LLC, et al. v. John Crane, Inc., et al.*, No. MO 15-CA-097 ADA, Feb. 21, 2020 Hrg. Tr., 15:15–17 ("if an expert wants to talk about something that's not mentioned in the expert report, that [] is a pretty good basis for an objection that will be sustained").

FED. R. CIV. P. 26(a)(2) requires that an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Any party that, without substantial justification, fails to disclose the information required by Rule 26(a)(2) shall not, unless the failure is harmless, be permitted to use as evidence at trial, any witness or information not so disclosed. Fed. R. Civ. P. 37(c)(1); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) ("An expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report was 'substantially justified or harmless.'"); *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-CV-176, 2011 WL 7563868, at *2 (E.D. Tex. Sept. 23, 2011) ("The general rule is that an expert is not permitted to testify beyond the scope of his or her expert report.").

This Court's practice comports with the general practice of courts in this circuit which "consistently limit[] experts' testimony to the opinions and bases disclosed in their expert report." *Witt v. Chesapeake Exploration, L.L.C.*, 2011 U.S. Dist. LEXIS 76033, at *5 (E.D. Tex. July 13, 2011); *see also Adv. Tech. Incubator, Inc. v. Sharp Corp.*, 2010 U.S. Dist. LEXIS 145630, at *32-*33 (E.D. Tex. Mar. 31, 2010) (granting motion *in limine* to limit scope of expert testimony at trial to expert report). Thus, Roku asks the Court to enter an order *in limine* prohibiting ESW's experts from testifying to matters not included in their expert reports.[6]

---

[6] This MIL also pertains to any content struck from any of the individual expert reports and/or "erratas" thereto, as sought by Roku's pending *Daubert* motion and motion to strike. Dkt. 78, 80.

**MIL 9:   No Expert Witness Testimony From Individuals Other Than Those Expert Witnesses Who Have Been Properly Designated And Admitted As Such At Trial.**

The parties' deadline to disclose experts pursuant to Fed. R. Civ. P. 26 was November 13, 2020. *See* Dkt. 66 at 4. The only experts disclosed by ESW were Dr. Shamos and Mr. Reading. As such, these are the only individuals that should be permitted to appear as testifying experts for ESW. *See* Fed. R. Civ. P. 26(a)(2)(A), (B), and (D).

Fed. R. Evid. 701 does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness. Instead, this type of "expert" testimony by one "qualified . . . by knowledge, skill, experience, training, or education" is governed by Federal Rule of Evidence 702. *Cybergym Research, LLC v. ICON Health & Fitness, Inc.*, No. 2:05-CV-527 (DF), 2007 WL 9724237, at *2 (E.D. Tex. Oct. 7, 2007) (granting MIL to preclude lay witness opinions on issues requiring specialized knowledge).

Roku raises this motion *in limine* because both parties have disclosed relevant fact and corporate lay witnesses with knowledge of highly-technical matters including the accused instrumentalities, asserted Patents, alleged commercial embodiments, and background prior art materials. Roku does not seek to preclude these individuals—including named inventors and technical personnel—from providing lay witness testimony about their own recollection of certain information. However, ESW should not be permitted to present these individuals as experts providing opinions regarding any of the allegations in this litigation. For example, Larry Westerman—a named inventor on a number of the asserted patents, ESW's retained technical consultant, and one of ESW's two corporate witnesses in this case—should be precluded from providing any type of opinion testimony under Rule 702 as he was not properly disclosed as an expert in this case and did not furnish any written report. Without some proper delineation from the Court, the jury might improperly consider Mr. Westerman to be a qualified expert presenting

6

opinion testimony in this case. *Stinson Air Ctr., LLC v. XL Specialty Ins. Co.*, No. CIV. SA-03-CA-61-FB, 2005 WL 5979097, at *3 (W.D. Tex. July 8, 2005) (excluding lay witness from testifying as expert and finding that "designation of Mr. Lowry as an expert witness as to these factual matters will only confuse the jury and give undue significance to his testimony."). The same is true of other named inventors that have been engaged by ESW in a consulting arrangement.

**MIL 10:   Any Implied Or Express Suggestion That Roku Damages Expert John Bone Espoused, Adopted, Applied, Or Arrived At A 30% Reasonable Royalty Rate.**

As set forth in Roku's briefing on its Motion to Strike Mr. Reading's "errata" (Dkt. 80, 100), Roku's damages expert John Bone never proposed a 30% reasonable royalty rate. *See, e.g.*, Dkt. 80 at 10 (Mr. Bone's effective royalty rates); Dkt. 100 at 7 (same). Mr. Bone applied a 30% profit split from apportioned profits as one step of many in his rebuttal damages model. Dkt. 80 at 10 n.3; Dkt. 94-6 (Bone Expert Report), ¶¶ 197–199 (critiquing Mr. Reading's analysis and noting "the 30% revenue sharing retained by Ensequence reflects a cap on an amount that Ensequence would desire to retain on any profit that specifically isolated the contribution of any of the patents-in-suit"), ¶ 241 (same), ¶ 349 (30% sharing of profits attributable to the patents-in-suit *results in an effective royalty range of 0.01% to 5.4%* for the asserted patents as shown in Table 34). Any suggestion that the 30% profit split step used by Mr. Bone also represents a 30% reasonable royalty rate is baseless, will surely mislead the jury, and should be excluded. Fed. R. Evid. 403.

**MIL 11:   Any Testimony Or Evidence From ESW Expert Marcus Reading As To A 30%, 15%, 3%, 2%, or 6% Reasonable Royalty Rate.**

As to any alleged 30% reasonable royalty rate, Mr. Reading's reports wholly fail to contain any reference to such a royalty rate. Fed. R. Civ. P. 26(a)(2)(B) (expert's report must contain "a complete statement of all opinions . . . and the basis and reasons for them"). Indeed, Mr. Reading admits that he did not opine on a 30% reasonable royalty rate in either his original or supplemental expert report. Dkt. 80 at 9 (citing Exh. 4 (Reading Dep. Tr.), 103:4–8, 108:19–23, 185:2–4). He

only raised a 30% reasonable royalty rate in his last-minute "errata," which should be struck as sought in Roku's Motion to Strike (Dkt. 80, 100). Further, as discussed in Roku's *Daubert* motion against Mr. Reading (Dkt. 78, 107), his opined royalty rates of 15%, 3%, 2%, and 6% do not meet the reliability requirements for expert testimony and should be excluded. Fed. R. Evid. 702.

**MIL 12:  Any Corporate Testimony That ESW Objected To Providing, Refused To Provide, Or Could Not Provide During Deposition.**

It would be unfairly prejudicial and untimely for ESW to present testimony at trial that it refused to or could not provide during deposition. Fed. R. Evid. 403; Fed. R. Civ. P. 37(c)(1). For example, ESW's first designated corporate witness Neeraj Gupta did not have information regarding the current status of any ESW products based on Ensequence technology or historical Ensequence documents and events. *See, e.g.*, Exh. 3 (Gupta Dep. Tr.), 72:20 to 73:7 (no knowledge regarding Ensequence cash collateral budget), 79:10–19 (no knowledge regarding ACR providers to Ensequence/ESW), 92:3–25 (no knowledge whether ESW has entered into any new agreements with Smart TV manufacturers or offered Ensequence's interactive ad software to new customers), 96:8–97:4 (no knowledge regarding why Ensequence chose certain revenue sharing percentages), 98:1–9 (did not know if ESW was further commercializing existing products); 115:12–120:1 (did not know if Ensequence customer contracts were still in existence with ESW), 120:7–121:1 (did not know if ESW was actively offering the AdConneqt product, who customers of Promotions+ were, or how much revenue has been generated from Promotions+), 130:22–131:8 (not aware of any new products that rely on Ensequence technology), 150:20–154:1 (did not review agreements ESW had with networks and did not have information regarding Ensequence operations).

ESW then designated former Ensequence employee (and current ESW consultant) Larry Westerman on certain 30(b)(6) topics—primarily as to technical aspects. He was unable to, for example, provide testimony on (i) certain Ensequence products listed in ESW interrogatory responses—JAWS, Nexus, and Jurassic; and (ii) the financial aspects of documents produced late in

the discovery period, including agreements between Ensequence and its customers. *See, e.g.*, Exh. 4 (Westerman Day 1 Dep. Tr.), 180:23–182:1 (no information regarding JAWS, Nexus, or Jurassic products); Exh. 5 (Westerman Day 2 Dep. Tr.), 274:15–275:8 (did not recall Nexus or JAWS tools), 303:2–305:15 (never saw an Ensequence rate card), 343:20–347:18 (no knowledge of financials related to Ensequence's agreement with Audible Magic and attorney colloquy regarding the fact that neither ESW nor Mr. Westerman had knowledge of the financial aspects of agreements produced late in discovery), 356:19–367:5 (no knowledge, other than with respect to technology referenced, regarding Ensequence agreements with certain third parties), 373:17–377:16 (same as to other customer agreements).

Indeed, ESW's counsel confirmed that "there may be some information that—that we literally don't have corporate knowledge of." Exh. 3 (Gupta Dep. Tr.), 153:1–3. Thus, any ESW corporate testimony at trial on subject matter ESW could or would not provide in its corporate depositions should be excluded as prejudicial. Fed. R. Evid. 403; Fed. R. Civ. P. 37(c)(1).

**MIL 13:  Any Testimony Not Provided In Deposition Due To A Claim Of Attorney Client Or Work Product Privilege.**

During the corporate depositions of ESW, both Mr. Gupta and Mr. Westerman were instructed not to reveal certain information on the basis of privilege. *See, e.g.*, Exh. 3 (Gupta Dep. Tr.), 40:25–41:18 (when ESW first identified Roku as a potential infringer); Exh. 4 (Westerman Day 1 Dep. Tr.), 129:13–130:17 (specifics regarding identification of prior art references during prosecution of the patents-in-suit), 207:18–208:13 (results of prior art search regarding the '349 and '294 Patents). ESW should thus not be allowed to ambush Roku at trial with information ESW previously refused as privileged.

**MIL 14:  No Reference To Roku's Overall Revenues Or Profits (Except As Needed To Establish Royalty Base(s) For Damages Purposes), Or Implied Or Express Suggestion That Sought Damages Is Relatively Small Compared To Roku's Overall Revenues Or Profits.**

Other than as necessary to establish a royalty base for damages purposes, any Roku overall revenue or profits financial information is irrelevant and prejudicial as referring to Roku's overall economic status and ability to pay the sought damages. Fed. R. Evid. 402, 403. The disclosure of such information "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011).

**MIL 15:   Argument, Suggestion, Documents, Testimony, Or Other Evidence Regarding Quantity Of Roku Player Devices Sold.**

ESW does not accuse Roku players of infringement. And Mr. Reading did not calculate damages based on the number of Roku players. *See* Dkt. 79-1 (Reading Expert Rep.), ¶ 107 (noting MWTW is only available on Roku TVs, not players), ¶¶ 152–153 (noting the revenue relevant to Mr. Reading's damages opinions is the platform, not player revenue). Both parties' damages experts used the number of Roku players in certain apportionment steps, and Roku does not seek to exclude expert testimony regarding the number of Roku players as part of an explanation of apportionment. However, any extraneous testimony or argument regarding the quantity of Roku players beyond apportionment is irrelevant and risks misleading the jury. Fed. R. Evid. 402, 403.

**MIL 16:   No Extraneous Statement During Closing That Is Unrelated To The Evidence Presented Or A Disputed Issue That Is Designed Primarily To Illicit An Emotional Juror Response.**

Roku has narrowly tailored this MIL to the types of irrelevant and/or unreasonably prejudicial statements which are inadmissible under Rules 401, 402, and/or 403. Although Roku cannot reasonably anticipate what specific statement(s) ESW might offer during closing arguments, ESW's refusal to agree to this straight-forward proposal is concerning, especially as Roku cannot raise this issue with the Court before ESW's closing arguments to the jury. Simply, Roku requests that the Court preclude any extraneous and inflammatory statements during closing arguments that are unrelated to evidence or disputed issues presented during witness testimony.

10

Dated:  February 18, 2021              Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Wasif H. Qureshi*
Wasif H. Qureshi
wqureshi@jw.com
Leisa Talbert Peschel
lpeschel@jw.com
Chris N. Cravey
ccravey@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

Blake T. Dietrich
bdietrich@jw.com
2323 Ross Ave., Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000

David N. Deaconson
Texas Card Bar #05673400
Pakis, Giotes, Page & Burleson, P.C.
P.O. Box 58
Waco, TX  76703-0058
(254) 297-7300 Phone
(254) 297-7301 Facsimile
deaconson@pakislaw.com

*COUNSEL FOR DEFENDANT ROKU, INC.*

## CERTIFICATE OF CONFERENCE

On February 11, 15, and 16, 2021, the undersigned conferred by e-mail and phone with counsel for ESW regarding the Roku Motions *in Limine* sought herein. ESW, through its counsel, agrees to Roku MILs 1, 6, and 17 and opposes Roku MILs 2–5 and 7–16.

*/s/ Leisa Talbert Peschel*
Leisa Talbert Peschel

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 18, 2021, the foregoing and accompanying documents have been filed with the Court's ECF filing system and have been e-mailed to counsel of record.

*/s/ Wasif H. Qureshi*
Wasif H. Qureshi