**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **ESW HOLDINGS, INC.,** | § | |
| | § | |
| **Plaintiff/Counterclaim-defendant,** | § | **CIVIL ACTION NO. 6:19-CV-44-ADA** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **ROKU, INC.,** | § | **PATENT CASE** |
| | § | |
| **Defendant/Counterclaim-plaintiff.** | § | |

<u>**PLAINTIFF / COUNTERCLAIM-DEFENDANT ESW HOLDINGS, INC.'S
MOTION FOR A NEW TRIAL**</u>

Plaintiff ESW Holdings, Inc. ("ESW") respectfully moves for a new trial under Federal Rule of Civil Procedure 59(a) and, in the alternative, Federal Rule of Civil Procedure 37(c).

## INTRODUCTION

At trial in this patent-infringement case, the defendant, Roku, Inc. ("Roku"), presented egregiously improper expert testimony—testimony so misleading and inconsistent with fundamental claim-construction principles that this Court remarked on the record that it was "shocked" at what it had just heard.  Trial Tr. 718:9-19.   Roku's technical expert, J. Tipton Cole, who holds a law degree, premised his analysis on the most elementary legal error conceivable in a patent case: he construed a patent claim more narrowly for his infringement analysis than for his invalidity analysis.  When asked if that was legally improper, he said "[n]o," "[n]ot necessarily," and when asked if his opinion had rested on that error, he said, twice, "I don't know."  *Id.* at 711:21, 712:25, 713:4.  Compounding the impropriety of his testimony, Cole told the jury *nine* separate times that a computer-readable medium software claim was really a "system" claim and based his noninfringement opinion on that view.  Yet when asked if he understood that his characterization of the claim was "legally incorrect," he immediately admitted: "I understand that's legally incorrect.  Yes." *Id.* at 729:7.

In light of the extraordinarily improper expert testimony that Roku presented to the jury, a new trial is warranted under Rule 59(a)(1)(A).  Not only did Cole's views lack legal foundation, but they were not disclosed in his expert reports, which prevented ESW from seeking to exclude them before trial and from planning its trial strategy to take those views into account.  The introduction of his testimony therefore violated Federal Rule of Civil Procedure 26(e)(2), because it was not disclosed to ESW at the appropriate time, and Federal Rule of Evidence 702, because

expert testimony premised on elementary legal errors is not reliable.  His testimony should therefore be stricken from the record in its entirety.  *See Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1380-1383 (Fed. Cir. 2013).  Alternatively, Cole's testimony should simply be assigned no weight as lacking in basic credibility and persuasiveness.  In either event, the remaining trial evidence strongly disfavors the jury's verdict of noninfringement and invalidity, and thus a new trial is warranted.  *See id.*

Even if this Court concludes that a new trial is not warranted under Rule 59(a)(1)(A), it should nevertheless grant a new trial as an appropriate sanction under Rule 37(c)(1)(C) for Roku's disclosure violations.  Allowing Roku to benefit from this situation would be unjust and would incentivize future litigants to game the system in similar fashion, safe in the knowledge that a favorable jury verdict would wash their impropriety clean.  It would also diminish confidence in the fairness and accuracy of our patent system if parties could obtain favorable jury verdicts by presenting such undisclosed, legally erroneous, and internally inconsistent expert testimony.

## BACKGROUND

This Court held a jury trial in this case from April 5 to April 9, 2021.  As particularly relevant here, ESW presented evidence at trial that two Roku products—Direct Publisher and RALE + Roku Plug-in—infringed claim 4 of U.S. Patent No. 7,430,718 ("the '718 patent").  Roku argued to the jury that the accused products did not infringe claim 4 and that claim 4 was in any event anticipated by U.S. Patent No. 7,594,181 ("the Rothwein reference").  The parties' non-damages evidence principally consisted of expert testimony from ESW's expert, Dr. Michael Shamos, and Roku's expert, J. Tipton Cole.  The jury ultimately returned a verdict of noninfringement and invalidity of claim 4 of the '718 patent, as well as noninfringement of claims 1 and 2 of U.S. Patent No. 7,260,782 ("the '782 patent").

### A.      The Parties' Pretrial Disclosures

The preamble of claim 4 of the '718 patent reads:

> A graphical user interface (GUI) residing on a computer-readable medium for creating interactive television applications, the GUI comprising . . .

A claim preamble is generally "regarded as limiting if it recites essential structure that is important to the invention or necessary to give meaning to the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).  Although "[w]ether preamble language is limiting is a claim-construction issue," *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1374 (Fed. Cir. 2021), this Court did not rule on whether the preamble of claim 4 is limiting. *See* Final Claim Construction Order, Dkt. No. 45 (Apr. 2, 2020).  That was because the parties had not identified that issue as disputed.  *See* Joint Claim Construction Statement, Dkt. No. 35 (Jan. 8, 2020).  Indeed, up until the third day of trial, the parties and their experts never once disputed that the preamble of claim 4 is limiting—with Dr. Shamos and Cole both affirmatively addressing the limitations of the preamble in their infringement and invalidity analyses.

ESW's infringement contentions, which Dr. Shamos incorporated by reference into his infringement report, presumed that the preamble is limiting and asserted that the accused products met its limitations.  *See* Shamos Infringement Report ¶ 152; Ex. E, at pp. 59-60; *id.* at Ex. F, at p.78.  In his rebuttal report on infringement, relying on the prosecution history, Cole expressly asserted that the preamble is limiting.  Cole Infringement Report ¶¶ 196, 198, 200, 203, 301.  In fact, the point was critical to his opinion, as he argued that the accused products did not meet the preamble's limitation of "residing on a computer-readable medium."  *Id.* ¶¶ 201, 301, 341.[1]

---

[1]     At trial, however, Cole himself admitted that the accused software was, in fact, stored on Roku's computer-readable medium.  Trial Tr. 728:16-24.  This fact was also confirmed by Dr. Shamos.  Trial Tr. 250:11-16, 274:14-18, 302:6-12.

Cole likewise treated the preamble as limiting in his invalidity report.  Cole Invalidity Report ¶¶ 345, 540, 541.  He asserted that the Rothwein reference discloses the preamble limitation of a "computer-readable medium."  *Id.* ¶¶ 540, 541.  But he completely disregarded the fact that the Rothwein reference does not disclose another limitation of the preamble: that the GUI must be used "for creating interactive television applications."  Accordingly, Dr. Shamos, in his rebuttal report, explained that "[n]othing in [the Rothwein reference] discusses using [its method] for an interactive TV application," and that "Mr. Cole completely ignores the phrase 'creating interactive television applications' [in the preamble of claim 4]."  Shamos Invalidity Report ¶¶ 307, 435.  It was thus clear by December of last year that the "interactive television" limitation would pose a challenge for Roku's invalidity arguments at trial.[2]

Despite that challenge, Roku made clear on the eve of trial that its position would continue to be that the preamble of claim 4 is limiting, presumably because it planned to argue to the jury that the accused products did not satisfy the "computer-readable medium" limitation in the preamble.  Specifically, in its pretrial noninfringement contentions for claim 4, Roku wrote that "ESW did not provide an adequate or complete mapping of claim terms, including . . . 'GUI residing on a computer-readable medium,'" and (with respect to Direct Publisher) that "ESW does not identify 'a computer-readable medium' on which the claimed graphical user interface resides."  Dkt. No. 152, at 10, 11 (Mar. 25, 2021).  Those statements confirmed that Roku was treating the preamble as establishing claim limitations.

---

[2]   Dr. Shamos's invalidity rebuttal report took issue with Cole's claim that the prosecution history demonstrated that the entire preamble is limiting.  Shamos Invalidity Report ¶ 259.  But it is clear from the substantive discussion of infringement and invalidity in his report that he was not ultimately disputing that the preamble of claim 4 is limiting—arguing only that the prosecution history did not so establish.  *See, e.g.*, Shamos Invalidity Report ¶¶ 307, 435.

**B.      Cole's Infringement Testimony**

During the infringement portion of his trial testimony, Cole remained consistent with his reports, expressly testifying that the preamble of claim 4 is limiting.  He began his discussion of claim 4 by testifying that the "graphical user interface (GUI) residing on a computer-readable medium" element of the preamble is a claim limitation.  He first contended that the phrase renders claim 4 a "system" claim:

> A.      . . . . Claim 4 is another independent claim.  It's discussing a system – or it's expressed as *a graphical user interface residing on a computer readable medium*, and we treat that like a system.  This is a system with two major components.

Trial Tr. 673:2-6 (emphasis added).  On that premise, Cole went on to allege that the accused products do not qualify as a "system"—and so do not satisfy the limitation set forth in the preamble—because Roku itself allegedly does not assemble the different components.  For example, with respect to the RALE + Roku Plug in, he testified:

> A.  Okay.  So once again, the infringement theory that Dr. Shamos offers is a collection of tools, the Roku Advanced Editor, the Eclipse Integrated Development Environment and the Eclipse Roku plug-in.  So it's an assembly of multiple elements to make the system.
>
> Q.  Do you need to have all those – are those components, do they come together?
>
> A.  They don't come together, and that's important for the system claim. The – these are separate items.  They're separately used.  And if anybody assembles these things together, it's the channel developer, not Roku.
>
> The channel developer has to choose what tools he uses.  Roku doesn't bundle any of these things together.
>
> * * *
>
> Q.  Okay.  So in your opinion, then, does Roku make this system?
>
> A.  Roku doesn't make the system, and it doesn't make the system available.

Trial Tr. 678:6-679:5.  He similarly relied on the contention that the preamble requires a "system" for his opinion that Direct Publisher does not infringe claim 4.  *Id.* at 687:15-688:23.

This testimony is significant in two respects relevant to this motion.  First, Cole repeatedly—in fact, *nine* times—labeled claim 4 a "system" claim.  Trial Tr. 673:2-6; 673:20-22; 678:14-15; 682:12-13; 682:21-683:1; 683:7-11; 683:19-22; 687:15-18; 688:21-23.  That was the foundation for his argument that Roku does not infringe claim 4 because it does not "bundle" the components of the products together, even though each of the components is stored on Roku's servers (see note 1, *supra*).  Second, Cole unmistakably proceeded under the understanding that the preamble is limiting, since it was the preamble language that he construed to render claim 4 a "system" claim.  The view that the preamble is limiting was consistent with the analysis in his two reports. It was also consistent with testimony by another Roku witness, who insisted that Roku does not provide "interactive TV," a term found only in the preamble of claim 4.  Trial Tr. 597:18-598:3; 600:23-601:13.

## C.    Cole's Invalidity Testimony

In his invalidity testimony, Cole abruptly changed course.  He overtly led the jury to believe that the preamble is *not* limiting and so the Rothwein reference did not have to disclose the "interactive television" element of the preamble to support an invalidity verdict:

> Q.  Did the Court construe the language of the preamble?
>
> A.  No.  He did not.
>
> Q.  Can you explain why that may be relevant to your analysis?
>
> A. The presumption when looking at a patent is that the preamble is not limiting.  That is, the preamble is not a claim element.  Okay?  Sets a little bit of context.
>
> The – if the preamble is going to be a limiting factor in how you analyze a patent, that is based on the judge's determination that it should be a limitation of the patent.

Trial Tr. 697:10-19.  Cole went on to opine (implausibly) that Rothwein did, in any event, disclose

the "interactive television" element.  *Id.* at 697:20-699:8, 704:16-705:2.  But he then assured the

jurors that even if they did not agree with him on that point, they could still return a verdict of

invalidity on the ground that the preamble is not limiting:

> Q.  So in your opinion is interactive TV a requirement for this claim?
>
> A.  No.  Once again, the interactive TV is only mentioned in the preamble which hasn't been determined to be limiting.  But, you know, I just went ahead and covered it just in case.

Trial Tr. 705:3-7.

That testimony was irreconcilable with Cole's reports and his testimony on infringement,

which relied in critical respects on the understanding that the preamble is limiting.

### D.     Cole's Testimony on Cross-Examination

On cross-examination, Cole then gave a series of answers that revealed a fundamental mis-

understanding of multiple aspects of patent law.

In light of the inconsistency between Cole's infringement and invalidity testimony, ESW's

counsel asked him if he agreed that "the scope of Claim 4 is the exact same when we're doing our

infringement analysis as when you're doing your invalidity analysis."  Trial Tr. 711:17-20.  His

answer was: "No.  Not necessarily."  *Id.* at 711:21.  But Cole's position was in direct contravention

of fundamental claim-construction principles.  Indeed, it is "'axiomatic that claims are construed

the same way for both invalidity and infringement.'"  *Source Search Techs., LLC v. LendingTree,*

*LLC*, 588 F.3d 1063, 1075 (Fed. Cir. 2009) (quoting *Amgen Inc. v. Hoechst Marion Roussel,*

*Inc.,* 314 F.3d 1313, 1330 (Fed. Cir. 2003)).

ESW's counsel then asked Cole whether he was "telling us that you applied a different

claim construction for invalidity than you did for noninfringement."  Trial Tr. 712:22-24.  He

answered: "It's possible, but I don't know --- ." *Id.* at 712:25.  When ESW's counsel, incredulous, repeated the question, Cole again answered:  "I don't know." *Id.* at 713:1-4.

ESW's counsel proceeded to confront Cole about his inconsistency on whether the preamble of claim 4 is limiting, quoting his invalidity report, in which Cole wrote that the preamble is limiting, and contrasting that with his trial testimony.  Trial Tr. 713:7-714:15.  Cole ultimately asserted that in his report, "I didn't say the whole preamble was limiting.  I just said that the computer-readable medium part was." *Id.* at 715:10-11.  But he ultimately admitted that his analysis in his invalidity report was not consistent with his testimony:

> Q. So you presumed that the preamble was limiting in your report, and you're presuming that it's not limiting today.  Accurate?
>
> A.  In some respects.  Yes.

Trial Tr. 715:12-15.  ESW's counsel went on to challenge Cole on his alternative position that Rothwein somehow discloses the preamble's "interactive television" limitation, even though Rothwein says nothing about television. *See id.* at 715:20-716:7, 717:13-18.

During a recess between the invalidity and infringement portions of the cross-examination, this Court addressed the parties:

> I'll just say, I'm -- on the record, I don't know what to do in response to having a witness just tell me that he's used different standards when he did his infringement contentions -- when he did his noninfringement analysis and his invalidity analysis.  I don't know what I'm going to do.  That's what I heard him testify. . . .
>
> I don't remember a Daubert on this, but I'm shocked. . . .

Trial Tr. 718:9-19.

After the recess, the cross-examination continued on infringement of the three claims at issue.  When ESW's counsel turned to claim 4 of the '718 patent, Cole astonishingly admitted that

the centerpiece of his noninfringement analysis—that claim 4 recites a "system"—was "legally

incorrect":

> Q.  Okay.  All right.  Mr. Cole, you testified just before the break that Claim 4 of the '718 patent is a system claim.  Do you recall that?
>
> A.  Yes.  I believe all the analysis is in the style of a system claim.
>
> Q.  You understand that's legally incorrect, right, sir?
>
> A.  I understand that's legally incorrect.  Yes.  I was just trying to explain the analytical style.
>
> Q.  Okay.  Claim 4 is a Beauregard claim or computer medium claim?
>
> A.  Yes.

Trial Tr. 728:25-729:11.

## E.    Cole's Testimony on Redirect

On redirect, Roku's counsel barely attempted to rehabilitate Cole's stunning admissions that he did not know whether he used a different claim scope for infringement and invalidity and that his trial testimony differed from his invalidity report.  (Roku's counsel did not even attempt to elicit an explanation for why Cole had predicated his testimony on a "legally incorrect" characterization of claim 4 as a "system" claim.)  Without any effort to explain his prior admissions and inconsistencies, Cole simply answered "Yes" when asked whether he had applied the same claim scope for infringement and invalidity.  Trial Tr. 732:3-5, 12-14.  He did not clarify for the jury whether he believed that the preamble of claim 4 is limiting, nor did he offer any explanation for how his testimony could be reconciled with the correct legal principles.

## F.    Roku's Closing Argument

During summation, Roku's counsel doubled down on Cole's newly announced view that the preamble is not limiting.  Roku's counsel stated that ESW had the burden to

prove "that Roku, and only Roku makes, uses or sells every word in the body of these claims," and "[t]here's *122 words* in the body of Claim 4."  Trial Tr. 978:16-21 (emphasis added).  That word count (which was apparently meant to be 121) excludes the preamble. Roku's framing was again a stark departure from Cole's expert reports, which stated repeatedly that the preamble is limiting, as well as Roku's pretrial submission and Cole's own infringement testimony.  It appears to have reflected a judgment by Roku's counsel by the end of trial that a non-limiting preamble gave it more favorable odds of success than a limiting preamble.

**STANDARD FOR GRANTING A NEW TRIAL**

The standard for granting a new trial under Rule 59(a)(1)(A) is "whether the verdict is against the great weight of the evidence."  *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 269 n.2 (5th Cir. 1998) (internal quotation marks omitted).  A "verdict can be against the great weight of the evidence, and thus justify a new trial, even if there is substantial evidence to support it."  *Id.* (internal quotation marks omitted).  And "[t]he trial court in passing on a motion for a new trial need not take the view of the evidence most favorable to the verdict winner, . . . but may weigh the evidence."  *Id.* (internal quotation marks omitted).

This Court also has discretion to grant a new trial as a sanction for a prevailing party's failure to timely supplement an expert report as required by Federal Rule of Civil Procedure 26(e)(2).  Fed. R. Civ. P. 37(c)(1)(C) (Court may impose "appropriate sanctions" for violation of Rule 26(e)); *see Mar Com Inc. v. F/V Hickory Wind*, 120 F. App'x 74, 75 (9th Cir. Jan. 12, 2005).

## ARGUMENT

This Court should grant a new trial on either of two grounds.

First, a new trial is warranted under Rule 59(a)(1)(A).  The testimony of Roku's technical expert, J. Tipton Cole, should be stricken from the record under Rule 37(c)(1) because he did not disclose in his expert report that he viewed the preamble of claim 4 of the '718 patent as non-limiting and that he considered claim 4 to be a system claim—omissions that lacked any conceivable justification and that seriously prejudiced ESW.  *See Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1380-1382 (Fed. Cir. 2013).  In addition, his testimony was so rife with legal errors and internal inconsistencies that it should be stricken in its entirety as unreliable under Federal Rule of Evidence 702.  Without Cole's testimony, the verdict is plainly against the great weight of the remaining relevant evidence, which consists primarily of the testimony of Dr. Shamos.  A new trial under Rule 59(a)(1)(A) would therefore be warranted.  Alternatively, his testimony should simply be assigned no weight in the Rule 59(a)(1)(A) balance as lacking in basic credibility, and a new trial should be granted on that basis.

Second, this Court should grant a new trial as an "appropriate sanction[]" under Rule 37(c)(1)(C) for Roku's failure to disclose before trial important aspects of the opinions that Cole presented during his testimony.

## A.    The Verdict Is Against the Great Weight of the Evidence Because Cole's Expert Testimony Rested Critically on Multiple Legal Errors

This Court should grant a new trial under Rule 59(a)(1)(A).  Cole's undisclosed, legally erroneous, and internally inconsistent opinions should be stricken from the record or assigned no weight, and the remaining relevant evidence overwhelmingly disfavors the jury's verdict.

### 1.    Cole's Testimony Rested on Two Stark Legal Errors

Cole's expert testimony rested on two substantial legal errors that fatally undermined his

conclusions and his credibility.

*First*, Cole applied a claim scope for his invalidity analysis of claim 4 that differed from the scope that he had applied for his infringement analysis of the same claim—as the Court itself explained in noting that it was "shocked" at what it had just heard.  Trial Tr. 718:9-19.  It is of course "'axiomatic that claims are construed the same way for both invalidity and infringement.'" *Source Search Techs.*, 588 F.3d at 1075 (quoting *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1330 (Fed. Cir. 2003)).  As the Federal Circuit has explained, "[a] patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quoting *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.,* 431 F.2d 539, 544 (5th Cir. 1970)).

This Court was correct in observing that Cole had openly admitted on the witness stand that he had "used different standards . . .  when he did his noninfringement analysis and his invalidity analysis."  Trial Tr. 718:10-13.  Consistent with the reports that he had submitted during discovery, Cole initially testified that, for purposes of his infringement analysis, a "computer-readable medium" is a limitation of claim 4.  *See* pp.5-6, *supra*.  But that limitation appears only in the preamble.  The understanding that the preamble is limiting was also reflected in (i) Roku's pretrial submission, which stated that one of its noninfringement arguments would be that the computer-readable medium limitation was not met, *see* p.4, *supra*, and (ii) Roku's repeated contention that it did not provide "interactive TV," a term that is also found only in the preamble of claim 4, Trial Tr. 597:18-598:3; 600:23-601:13.  In his trial testimony on infringement, Cole also went on to explain that, in his view, the requirement of a computer-readable medium rendered claim 4 a "system" claim (which was itself erroneous for reasons discussed below).  And he argued to the jury

that because Roku supposedly did not itself combine the two components of claim 4—the "template author component" and the "episodic creator component"—Roku did not practice the so-called "system" claim.

But Cole's story changed 180 degrees when he turned to invalidity. Roku's counsel, apparently concerned that the jury might conclude that Rothwein did not disclose the "interactive television" element in the preamble, began by eliciting testimony from Cole that "the preamble is not a claim element" because the Court had not so held. Trial Tr. 697:10-16. Although he later testified that he had analyzed whether the "interactive television" limitation was disclosed by Rothwein "just in case," the natural and intended effect of his testimony was to lead the jury to conclude that it did not need to agree with him on the "interactive television" limitation to reach a verdict of invalidity, because the preamble is not limiting. As he underscored for the jury, "the interactive TV is only mentioned in the preamble which hasn't been determined to be limiting." *Id.* at 705:5-7.

Roku's transparent strategy was to convince the jury that it could find *both* (i) no infringement on the ground that the "computer-readable medium" limitation in the preamble was not met by the accused products; and (ii) invalidity on the ground that Rothwein was not required to disclose the "interactive television" element set out in the preamble. Revealingly, although this Court expressly noted that Cole could correct or clarify his testimony on redirect, Trial Tr. 719:9-15, Roku's counsel did virtually nothing to make clear to the jury what Cole's true opinion was. Instead, Roku's counsel simply asked Cole the conclusory question of whether he had applied the same claim scope for infringement and invalidity, and Cole answered "Yes." *Id.* at 732:3-5, 12-14. Cole conspicuously was not asked to clarify whether he thought the preamble is limiting or not, leaving the jury to conclude that it could agree with both his noninfringement and his invalidity

contentions, despite their inconsistency.[3]

*Second*, Cole's infringement testimony flatly mischaracterized the nature of claim 4.  He repeatedly—nine times in fact—described claim 4 as a "system" claim.  Trial Tr. 673:2-6; 673:20-22; 678:14-15; 682:12-13; 682:21-683:1; 683:7-11; 683:19-22; 687:15-18; 688:21-23.  Claim 4 does not use the word "system," and it is obviously a *Beauregard* claim.  A *Beauregard* claim recites a tangible article of manufacture: a computer readable medium that contains a computer program.  As Dr. Shamos explained, a *Beuaregard* claim does not require anyone to use the components of the claim together; all that is required is that Roku itself makes or uses computer-readable media containing software that can perform each of the steps in the claim, which Roku clearly does because all of the components of the accused software are stored on its servers.  Trial Tr. 907:25-908:23; *see Finjan, Inc. v. Secure Computing Corp.*, 626 F. 3d 1197, 1205 (Fed. Cir. 2010) (noting that "storage medium" claims "do not require the performance of any method steps").  But by mischaracterizing the claim as a "system" claim, Cole could tell the jury that the accused products do not practice claim 4 because the components are "separately used" and "if anybody assembles these things together, it's the channel developer, not Roku."  Trial Tr. at 678:14-17.

When confronted with the legal flaw in his testimony on cross-examination, Cole immediately admitted that his testimony had been "legally incorrect"—a concession virtually as startling as his admissions that he did not know if he had applied a different claim scope in his infringement and invalidity analyses and that his trial testimony contradicted his invalidity report.  Trial Tr. 728:25-729:11.  As explained above, Roku's counsel did not even ask Cole to correct or explain that error on redirect.

---

[3]   As Dr. Shamos pointed out in his testimony, Cole also applied a different construction of "episode application" in his noninfringement and invalidity testimony.  Trial Tr. 912:13-17.

**2.      Cole's Flawed Testimony Should Be Stricken from the Record and This Court
Should Grant a New Trial**

In light of the multiple interrelated legal flaws in Cole's testimony discussed above, Cole's

trial testimony should be stricken from the record, and the Court should grant a new trial because

the remaining evidence weighs strongly against the verdict.

Under Federal Rule of Civil Procedure 26(e)(2), "[a]ny additions or changes" to Cole's

expert report had to be disclosed by the time that Roku's pretrial disclosures were due.  Roku's

failure to comply with that rule *prohibited* Roku from "us[ing] that information . . . to supply

evidence . . .  at a trial, unless the failure was substantially justified or is harmless," Fed. R. Civ.

P. 37(c)(1).  Here, Cole did not disclose until trial—indeed, until after his trial testimony on in-

fringement—that he viewed the preamble of claim 4 as non-limiting.  Nor did he timely disclose

that he viewed claim 4 as somehow constituting a "system" claim and would predicate his infringe-

ment argument on that opinion.  Had Cole disclosed these opinions before trial, ESW could have

sought to exclude his testimony as unreliable or otherwise impermissible under Rule 702 and

*Daubert*—as the Court seemed to suggest during trial—or could have filed a motion *in limine* to

prevent him from introducing legally erroneous concepts to the jury.  At minimum, ESW could

have more thoroughly prepared its cross-examination of Cole to highlight his legal errors and to

train its factual rebuttal on his other arguments.

In this circumstance, the appropriate remedy is to strike Cole's testimony under Rule

37(c)(1)(C) and grant a new trial.  The Federal Circuit's decision in *Rembrandt*, 725 F.3d 1377, is

on point.  In that case, in a remarkably similar factual scenario, the "trial testimony" of the plain-

tiff's expert "did not match the opinions disclosed in his expert report," *id.* at 1379, and his testi-

mony under cross-examination differed from his earlier testimony on direct examination, *see id.*

at 1379-1380.  The trial court struck the expert's testimony from the record under Rules 26 and 37

because of the inconsistency between what was disclosed in the expert report and what the expert had said at trial.  *See id.* at 1380.  And because without that testimony there was insufficient evidence in the record to support the plaintiff's infringement claim, the court granted judgment as a matter of law to the defendant.  *Id.*

The Federal Circuit affirmed.  725 F.3d at 1381-1383.  The court began by explaining that "[a]n expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information in the report was 'substantially justified or harmless.'"  *Id.* at 1381 (quoting Fed. R. Civ. P. 37(c)(1)).  The court added that the "burden" is on the party who introduced the testimony to establish that it was "'substantially justified or harmless.'"  *Id.*  The court then concluded that "[t]here is simply no excuse for [the plaintiff's expert] waiting until cross-examination to disclose" information not contained in this report, especially given that he had "submitted his expert report nearly six months prior to trial."  *Id.* at 1382 (internal quotation marks omitted).  The expert's "late change in course significantly hampered [the defendant's] ability to adequately cross-examine [him] and denied it the opportunity to introduce competing evidence."  *Id.*

The case for exclusion is even stronger here, because Cole not only failed to disclose significant opinions in his expert reports, but his trial testimony rested on multiple legal errors and internal inconsistencies that would have given ESW a strong basis to seek exclusion of his testimony, in whole or in part, before trial under Federal Rule of Evidence 702 and *Daubert*.  There was certainly "no excuse" for Cole to have waited until mid-way through his trial testimony to disclose that he now viewed claim 4's preamble as non-limiting, when he had said just the opposite in his expert reports—indeed, when he had said the opposite *earlier the same day* in his testimony on infringement.  *Rembrandt*, 725 F.3d at 1382.  This was by all appearances a deliberate strategy

to construe the preamble differently for infringement and invalidity purposes, giving Roku an un-fair advantage at trial.  Roku can offer no argument that this bait-and-switch is "substantially jus-tified," Fed. R. Civ. P. 37(c)(1).

Nor was it harmless.  Cole's reversal of his position skewed the entire course of proceed-ings, likely affected the outcome, and risked diminishing the perception that ESW received a fair opportunity to press its legal claims.  ESW would have prepared its case on both infringement and invalidity quite differently had it been informed before trial either that (i) Cole would take the indefensible position that patent claims may be construed differently for infringement and invalid-ity purposes; or (ii) Cole would abandon his reports' assertion that the preamble of claim 4 is limiting.  *See Rembrandt*, 725 F.3d at 1381, 1382.  Likewise, ESW would have prepared for trial differently had it known that Cole would predicate his noninfringement opinion at trial on the erroneous view that claim 4 is a "system" claim.

At minimum, ESW could have sought to prevent Cole from stating erroneous legal propo-sitions before the jury, or prepared a more targeted cross-examination to show the jury that Cole was laboring under a misunderstanding of the law.   In either event, ESW might have been able to devote more precious trial time to countering Roku's factual arguments on other issues, including those relating to infringement of the '782 patent.  Indeed, had his views been properly disclosed before trial, ESW could have used his errors to impeach his credibility on all issues.

The federal rules require disclosure and supplementation of expert reports for a reason: to ensure a fair presentation of arguments in cases involving scientific or technical material.  The behavior of Roku and Cole frustrated that purpose here.  The required remedy for this prejudicial violation of Rule 26 is to strike Cole's testimony in its entirety from the record, as the district court did in *Rembrandt*.  *Rembrandt*, 725 F.3d at 1380; *see Rembrandt Vision Techs., L.P. v. Johnson &*

*Johnson Vision Care, Inc.*, 282 F.R.D. 655, 661 (M.D. Fla. 2012); *see also Honey-Love v. United States*, 664 F. App'x 358, 361-362 (5th Cir. Oct. 19, 2016) (per curiam).  And as in *Rembrandt*, the remaining evidence that Roku introduced is insufficient to support the verdict.

Even aside from Rule 26(e), this Court should strike Cole's testimony in its entirety under Federal Rule of Evidence 702.  *See Rembrandt*, 282 F.R.D. at 665-667; *see also Rembrandt*, 725 F.3d at 1382 (reserving question of exclusion under Rule 702).  Rule 702 permits the introduction of expert testimony only if it "is the product of reliable principles and methods" and "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(c), (d).  Testimony on patent infringement and patent invalidity such as Cole's that rests on elementary errors of patent law, and that is internally inconsistent, is not "reliable" by any measure.   Indeed, courts have not hesitated to exclude expert testimony in patent cases when it rests on legal errors.[4]

Here, had Cole properly disclosed before trial that he would apply a different claim scope for infringement and invalidity and would characterize a *Beauregard* claim as a system claim, ESW would have had a compelling ground to ask the Court to exclude his testimony under Rule 702.  Indeed, although these errors relate specifically to claim 4, they are so egregious that they cast serious doubt on the reliability of all his testimony.  And for the reasons discussed above, were his testimony excluded, the great weight of the evidence would strongly disfavor the jury's verdict, so a new trial would be warranted.

---

[4]   *See, e.g., Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of expert testimony that relied on erroneous claim construction); *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG (JGRx), 2014 WL 8096334, at *2 (C.D. Cal. Apr. 21, 2014) (same); *Personalized Media Communications, LLC v. Zynga*, 2:12–CV–00068–JRG–RSP, 2013 WL 5962812, at *2 (E.D. Tex. Nov. 7, 2013) ("Because Dr. Fox misstates the law regarding enablement, the Court finds that the subject matter reflected in the Report is not sufficiently reliable and relevant to the issues before the jury, and should thus be excluded under Federal Rule of Evidence 702 and *Daubert*."); *see also id.* (alternatively excluding expert testimony under Federal Rule of Evidence 403 because risk of prejudice outweighed relevance).

### 3. Even If Cole's Testimony Is Not Stricken, the Great Weight of the Evidence Would Disfavor the Jury's Verdict in Light of His Errors and Inconsistencies

Even if this Court were to decline to strike Cole's testimony from the record, a new trial would be warranted because the verdict would still be against the great weight of the evidence. This Court should not assign any significant weight to Cole's testimony in light of his elementary legal errors and internally inconsistent views. Cole put tremendous emphasis on his assertion that claim 4 is a "system" claim—repeating it nine times. It formed the linchpin of Roku's nonin-fringement case on claim 4. But Cole readily admitted during cross-examination that his charac-terization was "legally incorrect." Likewise, a putative expert who treats a patent claim like a "nose of wax"—construing it one way for infringement and another way for invalidity—lacks even a modicum of credibility on any issue in this case, including those relating to the '782 patent. Although the jury apparently credited his testimony, this Court is in a far superior position to rec-ognize that his views rested on a legally unsound foundation and a woefully inadequate under-standing of the law. Rule 59 is intended for precisely this circumstance, where basic justice de-mands a new trial.

### B. Alternatively, the Court Should Grant a New Trial Under Rule 37(c)(1)(C) as a Sanction for Roku's Violation of Rule 26(e)(2)

For the reasons discussed above, Roku violated Rule 26(e)(2) by introducing expert testi-mony that differed substantially from the views disclosed in the expert's reports. And as explained above, the most straightforward remedy for that violation would be to strike Cole's testimony from the trial record under Rule 37(c)(1) and then rule that the jury's verdict is against the great weight of the remaining relevant evidence, requiring a new trial.

But if this Court were to conclude that the trial record still would not justify a new trial, another path would be open to the Court to redress Cole's egregiously improper testimony. Rule

37(c)(1)(C) permits the Court to impose "appropriate sanctions" for a violation of the duty to supplement an expert report. The rules provide a non-exhaustive list of possible sanctions through cross-referenced Rule 37(b)(2)(A), including "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (v), and (vi). Particularly given that those listed sanctions could result in a final judgment against the offending party, it follows that the lesser sanction of the grant of a new trial can be an "appropriate" exercise of discretion where the facts and circumstances warrant it, as courts of appeals have recognized. *See Mar Com Inc. v. F/V Hickory Wind*, 120 F. App'x 74, 75 (9th Cir. Jan. 12, 2005) (explaining that a district court has an "obligation under Rule 37(c)(1) to grant a new trial" where a party violates a discovery duty, "resulting in harm" to the other party).

The circumstances here warrant a new trial. Cole failed to disclose at the appropriate time his views about whether the preamble of claim 4 is limiting and whether claim 4 is a system claim. That prevented ESW from taking appropriate action to exclude his legally erroneous testimony and from presenting its best possible case to the jury. Cole compounded his errors by giving internally inconsistent testimony about the scope of the claim to the jury, causing this Court to react in shock to what it had heard. If there were ever a case where the sanction of a new trial under Rule 37(c)(1)(C) were warranted, this is it.

## CONCLUSION

Plaintiff ESW respectfully requests that this Court grant a new trial under Federal Rule of Civil Procedure 59(a) and, in the alternative, Federal Rule of Civil Procedure 37(c).

Respectfully submitted this 10th day of May, 2021.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ John F. Bash
John F. Bash
SBN 24067504
Scott L. Cole
SBN 00790481
201 West 5th Street, 11th Floor
Austin, Texas 78701
Email: scottcole@quinnemanuel.com
        johnbash@quinnemanuel.com
Telephone: 512-348-2206
Facsimile: 713-221-7100

-and-

BRACEWELL LLP

Conor M. Civins
SBN 24040693
Michael Chibib
SBN 00793497
Matthew K. Gates
SBN 24069770
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Email: conor.civins@bracewell.com
        michael.chibib@bracewell.com
        matt.gates@bracewell.com
Telephone: 512-472-7800
Facsimile: 800-404-3970

-and

Jared D. Schuettenhelm
701 Fifth Avenue, Suite 6200
Seattle, Washington 98104
Email: jared.schuettenhelm@bracewell.com
Telephone: 206-204-6210

*COUNSEL FOR PLAINTIFF ESW
HOLDINGS, INC.*